## Hanover Township School Directors.

*Courts—Court in banc—Definitions—Words and phrases—Power of removal of public officers—School directors—Quo warranto—Power of de facto officers.*

1. The word "court" in a statute is to be understood as meaning a tribunal assembled under authority of law at an appropriate time and place for the administration of justice, and not merely a judge thereof.

2. Whether an act is to be performed by one or the other, it is generally determined by the character of the act; but whenever it is a statutory power or duty conferred or prescribed, it can only be discharged by the assembled tribunal, however composed, whether of one judge or several.

3. The court in banc, as an assembled tribunal, must sit for the purpose of exercising the power of removal and appointment of public officials, when such power is conferred by statute upon the court.

4. Where a single judge makes an order appointing school directors such order is invalid, and the appointees named therein are no more than de facto officers, not requiring a quo warranto proceeding to remove them; revocation of the voidable order of appointment is sufficient.

5. Where the record of a proceeding appointing school directors does not disclose whether all the judges sat in banc and a majority of them acted, or only that a majority of those sitting in banc acted, and it cannot be determined whether or not all members of the court had an opportunity to consider and act as a body in the matter, the order of appointment made will be set aside on appeal.

6. In making such appointment all of the judges must act sitting in banc, or as many of them as believe themselves legally available for that purpose.

*Appeals—Review—Invalid proceedings—Appointment of school directors—Acts of May 22, 1722, P. L. 131, 1 Sm. L. 131; June 16, 1836, P. L. 784, and May 20, 1891, P. L. 101.*

7. Under the Acts of May 22, 1722, P. L. 131, 1 Sm. L. 131; June 16, 1836, P. L. 784, and May 20, 1891, P. L. 101, the Supreme Court, in setting aside invalid orders appointing school directors, may direct that the court below shall assemble as a court in banc for the purpose of appointing an entirely new board of school directors.

8. Where the court below has made an order setting aside appointments made by a single judge, and appointing others, and such order is set aside on appeal, because it is not apparent from the record that the court in fact sat in banc, an order directing the court in banc to elect a new board will permit it to elect the directors theretofore designated to fill the places of the board originally ousted.

9. Until such new election is had, the de facto directors can perform no acts aside from essential routine business.

Argued May 24, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 37, Jan. T., 1928, by James Hiscox et al., removed appointee school directors, from order of C. P. Luzerne Co., March T., 1927, No. 353, removing school directors, In re Removal of School Directors of Hanover Township.   All orders in proceeding set aside.

Petition to set aside appointment of school directors.

The opinion of the Supreme Court states the facts.

Petition granted.   James Hiscox et al., removed appointee school directors, appealed.

*Error assigned,* inter alia, was order quoting record.

*W. A. Valentine,* with him *Michael F. McDonald* and *George L. Fenner,* for appellants.—The judge or judges constituting the court for the hearing of proceedings to remove, and which created the vacancies is the court to fill the vacancies so created: Carter's Est., 254 Pa. 518; Moritz v. Luzerne Co., 283 Pa. 349; Summers v. Kramer, 271 Pa. 189; Lehigh Val. Coal Co. v. Commissioners, 250 Pa. 515.

Appellants' title to the office can only be questioned in a quo warranto proceeding: Warner v. Boro., 231 Pa. 141; Summit Hill Boro., 240 Pa. 396; Com. v. Pfrom, 255 Pa. 485; Eddy v. Boro., 281 Pa. 4.

1927.]        Arguments—Opinion of the Court.

The order removing appellants made by three of the five judges was illegal: Com. v. Mathues, 210 Pa. 372; Bedford v. Rosser, 283 Pa. 345; White v. Moore, 288 Pa. 411.

*G. J. Clark* and *Herman J. Goldberg,* for appellee.— The irregularity and improvidence of the appointment of Hiscox et al., appeared on the face of the record. The courts have inherent power to vacate such judgments of their own motion or on application of any person affected: Pantall v. Dickey, 123 Pa. 431; Automatic Co. v. D. & H., 233 Pa. 581; Stoke v. McCullough, 107 Pa. 39; Caruso v. Gallo, 62 Pa. Superior Ct. 584.

The Hiscox board might have been proceeded against by quo warranto but that is not the only way in which it could be reached: Com. v. Scutt, 262 Pa. 154.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 25, 1927:

Three sets of school directors figure in this case: (1) a board elected by the people and removed by the court below for dereliction in office, as hereinafter more particularly stated; (2) a board named by Judge Mc-LEAN of the court below to fill the unexpired terms of the ousted directors; and (3) a board named, or purporting to have been named, by the court below in banc.

The case comes before us on an appeal by the second of the above boards. May 10, 1927, we granted a rule to show cause why the appeal should not be made a supersedeas, and directed that all proceedings stay until further order of this court. Subsequently, on consideration of the fact that delay until the usual time for hearing appeals from Luzerne County would leave the direction of the schools of that district in a chaotic state, owing to the respective claims of the second and third of above boards to be rightfully in control, we concluded that the situation required us to advance the appeal for immediate hearing and final disposition at our May

Session in Harrisburg, the last meeting of the court for the purpose of hearing arguments prior to our fall session in Pittsburgh, at the end of September next. Accordingly, the case came on for decision.

The School Code Act of May 18, 1911, P. L. 309, provides by section 217, that, when a board of school directors refuses or neglects to perform the duties imposed upon it by law, any ten resident taxpayers in the district may petition "the court of common pleas of the county" for the removal of such board; that, "if the facts set forth in said petition......, or any material part thereof, be denied," the court shall fix a hearing, and if on such hearing the court shall be of opinion that the board had neglected and failed to perform its mandatory duties, or if "no answer is filed denying the facts set forth in said petition," the "court shall have the power to remove said board, or such of its number as in its opinion is proper, and appoint for the unexpired terms other qualified persons in their stead."

Proceedings under the above provision were commenced against the school directors of the Township of Hanover, Luzerne County; at first an answer denying the serious allegations of the petition was filed, but it was subsequently withdrawn by leave of the court, whereupon the following order was entered: "Now, 7th March, 1927, the rule to show cause why [several members named] should not be removed from office is made absolute and they are hereby removed from the office of school directors of Hanover Township and the following persons are appointed for the unexpired terms of the officers removed [naming persons to take the place of the late board]. The costs of these proceedings are placed upon respondents."

No exceptions were taken to this order, and counsel for the original board of directors stated in open court that they did not intend to appeal. The questions before us do not concern the propriety of the order so far as the removal of the old board is concerned, but have to

do with the appointment of the second and third boards. The situation requires a recital of further facts.

The above-quoted order was signed thus: "By the court, W. S. McLEAN, JR., Judge." At the time this order was filed, Judge COUGHLIN, a member of the court below, filed an opinion in which he stated that he concurred in the removal of the old board of directors but dissented from the appointment of others in their place, because "The appointment of school directors to fill vacancies thus existing must, under the law, be made by the court, which, in my opinion, signifies the entire court, or a majority thereof regularly convened, and not any one judge." At the same time, an opinion was filed by Judge FINE of the court below, wherein he stated that he shared Judge COUGHLIN'S views.

In connection with the above order, a paper which appears on the record under date of May 16, 1927, reads as follows: "We certify that on March 9, 1927, we made order that the school directors appointed by Judge McLEAN March 7, 1927, should remain in office until his return from a southern trip April 4, 1927, and should meanwhile function solely on routine business, which order, by inadvertence, was not entered of record." This is signed, "By the court in banc. FULLER, P. J." The president judge of the court below subsequently filed another paper to take the place of the last-mentioned order; this paper reads thus: "Now, May 16, 1927, we certify that on March 9, 1927, we ordered that final action on removal of school directors appointed by Judge McLEAN March 7, 1927, should be deferred until taken up by the court in banc after his return from a southern trip, in April, 1927, but meanwhile said directors should function solely on routine business, which order, by inadvertence, was not entered of record. By the court, banc" [Signed] "FULLER, P. J."

March 8, 1927, eleven taxpayers petitioned the court below, reciting the removal of the original board of school directors and the appointment of others to suc-

ceed them. This petition avers in substance that the Court of Common Pleas of Luzerne County is composed of five judges; that the matter of the appointment of the new board was not considered by the court as a whole; that the petitioners were advised that such appointment "can be lawfully made only by the five judges assembled and acting as the court" and praying that the order of March 7, 1927, signed by Judge McLean, might be set aside and that the court should act as a whole in making new appointments. The right of the taxpayers to petition the cause was not challenged.

Certain of the new appointees filed an answer in which they averred, inter alia, that Judge Jones of the court below had declined to participate in the removal proceedings because he had at one time, before being elevated to the bench, represented, as a practicing lawyer, the members of the deposed board; and that Judges Coughlin and Fine, prior to their appointment to the bench, were counsel for a "favored contractor" for the Hanover School District who was mixed up in the charges against the removed board. The respondents made the points of law that, since Judge McLean had signed the order removing the old board, he alone had power to appoint a new one, and that they, having been appointed by Judge McLean, could not be removed except by quo warranto. We shall consider the two points just stated after a further recital of the facts.

The record also shows this order: "Now, April 14, 1927, taking effect April 18, 1927, when new appointments will be made, a majority of the judges, sitting en banc, allows this petition to vacate the existing appointments for want of authority in a single judge to make the same." Signed, "By the court en banc. (3 vs. 2)."

The president judge of the court below filed a memorandum with the above order wherein he states, "I wish to accompany the foregoing order with this statement of my position. Technically speaking, every power

vested in the 'court' should be exercised by the 'court en
banc,' that is, by all of or a majority of judges regularly
convened in the court room at the courthouse; but strict
enforcement of this proposition would paralyze the ju-
dicial arm and undo most of the judicial acts." Presi-
dent Judge FULLER continues to say that it has always
been the custom of the court below to allow a judge who
acted in an ouster case to fill vacancies, and that, there-
fore, he favored "ratification" of the order entered by
Judge McLEAN and the "refusal of the petition to va-
cate."

Following the order last recited, the members of the
board appointed by Judge McLEAN petitioned for a rev-
ocation of the order vacating their appointment, which
petition was disposed of thus: "Order.  Now, April 26,
1927, a majority of the judges sitting en banc deny the
prayer of this petition," signed "By the court Banc."
On the same day the following order was filed: "Now,
April 26, 1927, the majority of the judges sitting in banc,
after ouster, appointment, and re-ouster, do now ap-
point, Raymond Gottschall for the unexpired term of
William Delancey [and six other persons for the respec-
tive unexpired terms of the remaining members of the
board originally ousted, by order of Judge McLEAN].
Requiescat in pace.  By the court, Banc."

The record contains a certificate dated May 19, 1927,
signed "By the court in banc, FULLER, P. J." as follows:
"We certify that the ouster proceeding was heard and
decided by Judge McLEAN without participation by any
other judge"; but a docket entry of the court below,
made prior to the removal of the original board and now
called to our attention, reads thus: "8th February, 1927,
motion for a bill of particulars is denied.  By court in
banc.  McLEAN, Judge."

We have before us two distinct sets of appointees to
take the places of the original board of school directors;
the first set designated by Judge McLEAN and the sec-

ond by what, in the body of the last above order of April 26, 1927, is called "the majority of judges sitting in banc," though at the foot thereof appear the words "By the Court, Banc." On this record we cannot be certain whether the members of the court below, in making the last appointments, really acted as a court, duly assembled, or simply as individual judges, acting disconnectedly; the record as a whole suggests the latter situation.

In the recent case of Moritz v. Luzerne Co., 283 Pa. 349, 351, we said: "The word 'court' in a statute is to be understood as meaning a tribunal officially assembled under authority of law at an appropriate time and place for the administration of justice, and not merely a judge thereof"; that "whether an act is to be performed by one or the other is generally determined by the character of the act, but whenever it is a statutory power or duty conferred or prescribed upon the court, it can only be discharged by the assembled tribunal, however composed, whether of one judge or several." Then, construing the statute there involved, we added these significant words, "Take, for instance, the power to appoint and remove; such power is conferred by the statute, not upon the judge, but in express terms upon the court." Again, in McCormick's Contested Election, 281 Pa. 281, 285, we said: "Where a court is acting as a whole or in banc, all the judges constituting the tribunal, or as many of them as may be available at the time, ought to sit together." Finally, in Carney v. Penn Oil Co., 289 Pa. 588, we referred to a motion to have a matter, properly determinable by the court in banc, acted on by that body, as a "perfectly proper motion," which should have been allowed, and we reversed the court below for not granting it.

Black's Law Dictionary, under the word "Banc," defines a court in banc thus: "The full bench, full court"; and "sitting in banc," as "a meeting of all the judges of a court, usually for the purpose of hearing arguments on

demurrers, points reserved, motions for new trial, etc., as distinguished from the sitting of a single judge at the assizes or at nisi prius and from trials at bar." To this definition, according to the Pennsylvania decisions, should be added, "and for the purpose of exercising the power of removal and appointment of public officials, when such power is conferred by statute upon the court."

The removal and appointment of public officials is in the nature of a political power which, in certain instances, according to the law of Pennsylvania, may be conferred upon the courts, but it is the sort of responsibility which must be shared by all the judges of the court acting in banc, or as many of them as are available for the purpose in any particular instance.

In the present case, when the accused school directors withdrew their answer, they admitted, at least for purposes of their removal, the averments of the petition. The order of ouster, dated March 7, 1927, was signed "By the court, W. S. McLean, Jr., Judge." The right of Judge McLean to act for the whole court in making this order was not challenged in the court below, and the record indicates that, so far as these removals are concerned, the order was filed after consultation with certain of his colleagues, at least two of whom appear to have, in a measure, participated in so much of the order as deals with that subject, though not in the appointment of successors to the ousted directors. Under these circumstances, the question of the validity of the removal of the original board cannot be raised at this time, and, in point of fact, it is not attempted to be raised. As before stated, all the questions before us relate to the subsequent part of the order of March 7, 1927,—that portion which makes the new appointments,—and additional orders, afterwards filed, removing the new appointees and naming others in their places; as to these matters, the right of the court below to act other than as a court in banc is challenged, and we think properly so.

The order of March 7, 1927, so far as it concerns the appointment of a new board, does not appear to have been the act of the court in banc, and, for that reason, it cannot stand when challenged; not being a valid order, the appointees named therein are no more than de facto officers, and it does not require a quo warranto proceeding to remove them; revocation of the voidable order of appointment is sufficient.

The next order, of April 14, 1927, states that "a majority of the judges sitting in banc allows" the petition to vacate the appointments previously made by "a single judge." The word "allows" is sometimes used in administrative law, or in practice, to denote that a petition, motion or rule is entertained, rather than granted; but here it probably means that the court below granted the prayer of the petition, and the parenthetical note at the foot of the order indicates that the action of the court was by a vote of three against two of the judges composing the court, which would account for all members of that body. The subsequent order, of April 26, 1927, states that "a majority of the judges sitting in banc" refused to rescind the order of April 14, 1927, and the second order of April 26, 1927, states that "a majority of the judges sitting in banc, after ouster, appointment and reouster, do appoint" the several persons named for the unexpired term of the original board. Whether, in the last two orders, this expression "a majority of the judges sitting en banc," means that all judges of the court sat in banc and a majority of them acted, or joined, in appointing the last named board, or whether it means only that a majority of those sitting in banc acted, we cannot tell; nor can we tell from this record whether or not all members of the court below had a proper opportunity to consider and act as a body on these several matters. In short, we do not feel assured from this record that, so far as the appointment of new school directors is concerned, the court in banc has, in any instance,

acted in an assembled meeting of all the judges of that tribunal or of as many as were available, where the matter could be properly discussed, deliberated upon, and determined.

It is the duty of those exercising judicial power to sink all individual feelings and to meet in harmony. As said by us in Summers v. Kramer, 271 Pa. 189, 196, 197, "The business of the courts should......always be so conducted as to command the respect of the people...... and hence it is but a truism to say that these requirements are almost or quite as essential as the judicial system itself, if the stability of the government under that system is to be maintained." No sufficient reasons appear upon the record why all the judges at present composing the court below should not act to carry out the order which we shall later enter in this case, or at least as many of them as believe themselves legally available for that purpose.

President Judge FULLER, in his memorandum of dissent accompanying the order of April 14, 1927, truly states that, if every function of a court had to be performed by all or a majority of the judges "regularly convened in the court room at the courthouse," it "would paralyze the judicial arm and undo most of the judicial acts" of the courts; but we are aware of no ruling that every power vested in a court must be so exercised. On the contrary, all of the cases, as well as the definitions of a court in banc, plainly show that, in most matters, a single judge can act, though certain classes of things must be done by the court as a whole; and, as before said, the exercise of statutory powers like those here involved falls within such a class.

Section 13 of the Act of May 22, 1722, 1 Sm. L. 131, 140, provides that the judges of the Supreme Court shall have the same powers as the justices of the court of King's Bench, Common Pleas and Exchequer, at Westminster. Section 1 of the Act of June 16, 1836, P. L.

784, provides that the Supreme Court "shall have power to hear and determine all and all manner of pleas, plaints, and causes which shall be......removed there from any other court of this Commonwealth," and "to examine and correct all, and all manner of errors of the ......courts of this Commonwealth......and......to reverse, modify or affirm" their orders, judgments and decrees. Finally, section 2 of the Act of May 20, 1891, P. L. 101, gives express power to this court to modify any order of a court below, and enter such judgment, order or decree as we may deem proper and just: Summers v. Kramer, supra, 196, 197, 198. Exercising the powers thus conferred upon us, we have decided that,—aside from so much of the order of March 7, 1927, as removes the original board of school directors and imposes costs,—all orders and decrees shown by this record must be set aside and the court below directed to assemble as a court in banc for the purpose of appointing an entirely new board of school directors; if the majority (Murray's Petition, 262 Pa. 188, 191) of the court so assembled decide to name any of the directors heretofore designated to fill the places of the board originally ousted, they, of course, may do so, or they may select others.

Any acts, aside from essential routine business, performed by those in charge of the schools of Hanover Township after the stay of proceedings granted by this court on May 10, 1927, are voidable as contrary to our order; and that order is to remain in force until the court below proceeds to elect or appoint a board of school directors under the order we are about to enter, which in effect refuses the petition for a supersedeas.

All orders heretofore entered in this proceeding appointing or purporting to appoint school directors are set aside; it is ordered that the record shall be returned at once to the court below and that its president judge shall forthwith call a meeting of the court in banc for the purpose of appointing a board of directors to con-

duct the schools of Hanover Township.*  Costs other
than those specified in the order filed by the court below
on March 7, 1927, to be paid by the school district.

---

*A certificate of the deputy prothonotary of the court below,
filed in the office of the prothonotary of the Supreme Court at
Philadelphia, June 25, 1927, shows the following order:

"Now, May 26, 1927, in prompt obedience to appellate authority,
five judges of this court, being all, having duly assembled on call
of the President Judge, in Court Room No. 1, in banc, and the
court having been opened with due formality for the express and
only purpose of transacting the business embraced in this order,
to wit, appointment of directors to fill existing vacancies in said
district, and the matter in hand having been properly discussed,
deliberated upon and determined, the court appoints [the same
parties as those previously appointed by the order of April 26,
1927, and for the same respective terms of office as therein desig-
nated.]

"Requiescat in pace atque virtute.
                    "By the Court,
                            "In Banc.

"Judge FULLER and Judge McLEAN being present, but not voting
for said appointees."