## First Congressional District Election.

(1)

2

*William F. Berkowitz, Edward W. Wills* and *Ira Jewell Williams,* for petition.

*Richard T. McSorley* and *Allen S. Morgan,* contra.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 28, 1928:

The petition in this case, for a rule to show cause why a writ of prohibition should not issue, was filed by James M. Beck, Republican candidate for Congress in the First Congressional District of the Commonwealth of Pennsylvania at the general election held on November 6, 1928. It avers that the election returns of the County of Philadelphia, in which the first district is located, were, on Thursday, November 8, 1928, brought before the Honorable HARRY S. MCDEVITT and the Honorable EDWIN O. LEWIS, "judges duly selected......to act as return judges" of that county; that, on November 10, 1928, after computation of the entire returns of all the wards in the district, an announcement was made in open court that the petitioner had received 73 more votes than his opponent William L. Rooney, the Democratic candidate; and that, thereafter, on November 13, 1928, a petition was presented to the above named two judges, sitting as the computation board, asking that certain ballot boxes be opened and the "votes in the divisions mentioned, or, if the court deems it proper, in all the divisions" of one ward in the district, "be recounted."

The petition for the writ of prohibition further states that the only averments in the petition to open the boxes, suggesting why a recount should be had, were that, in the Seventh Ward, being the one here in question, there appeared on the face of the returns "certain irregularities and discrepancies," which were "similar to those in

other divisions in other wards, where the court had already opened ballot boxes," and consisted of the facts that in certain instances Beck received a greater number of votes than the head of the Republican ticket, "said excess votes varying from 1 to 11" in the different divisions named, and that in other named divisions the votes for all the candidates on the Republican ticket were identical. In Beck's answer to the petition to open the boxes, he averred that counsel for his opponent was present during the computation of the votes of all the divisions involved and, wherever any irregularity appeared on the face of the returns, had asked the court to open the ballot boxes; but no such application had been made when the divisions now in question were being computed.

It appears, and petitioner for the writ avers, that the petition to open the ballot boxes contained no averment of a mistake or of fraud committed by the precinct election officers. As there stated, "The alleged discrepancies [mentioned in the other petition] might have resulted by ballots having been marked for both Republican and Democratic electors which would have nullified the vote as to the head of the ticket, or by an erasure, which would have invalidated the electoral vote, or by a split ballot with a vote for the candidate of the other party, or by the voter marking the ballot for the Congressional candidate either alone or on a split ticket, thereby diminishing the number of votes for the head of that ticket as compared with the number of votes for the Congressional candidate."

Finally, the petition for the writ avers that, "on November 19, 1928, the petition of William L. Rooney [to open the boxes] was dismissed by a divided court, his Honor Judge McDEVITT being of the opinion that the petition should be granted, and his Honor Judge LEWIS being of opinion that the petition should be refused"; that, "Thereupon, his Honor Judge LEWIS left the [court] room, and immediately upon his departure his

Honor Judge McDEVITT directed the clerk to notify all the election officers in the......divisions in question to appear on Friday, November 23, 1928, at 1 o'clock P. M. to open the ballot boxes and recount the ballots in said divisions." (Judge McDEVITT's answer shows that Judge LEWIS was informed that this course would be pursued.)

The petitioner,—contending that a "single judge could not, in the absence of his colleague, after the dismissal of the petition [to open the boxes], in effect overrule the order refusing the prayer of [that] petition by directing the taking of action directly contrary to such ruling," and that "under the law, the computation of election returns in Philadelphia County must be made by at least two judges,"—asks for a writ of prohibition against the Honorable HARRY S. McDEVITT, commanding him to "desist and refrain from continuing to act under his said order of November 19, 1928."

Both members of the computation board filed opinions. Judge McDEVITT, who would open the boxes, makes no claim in his opinion of any evidence before the board showing either mistake or fraud, or of any particular averment to that effect; he contents himself by stating: "Examination of the ballots in the two-score boxes that have already been opened would justify the conclusion of the petitioner that the returns on the face of them are palpably erroneous and that a recount, while it might not change the result of the election, would at least add to the correctness of the count." On the other hand, Judge LEWIS, who would not open the boxes, correctly states: "There is not in the petition itself one averment that would justify us in granting the prayer to have the boxes opened in this court. The petitioner's counsel do not assert orally or in the petition itself that there was either fraud or mistake in counting the ballots; and certainly not one line in the petition discloses any fraud or error apparent on the face of the returns. We have no other ground of jurisdiction; we must have

before us palpable fraud or palpable mistake [properly averred or] exhibited by the returns. [The Act of May 19, 1923, P. L. 267, 269, provides that before election officers are summoned to a computation court to correct their count "palpable fraud or mistake" must be specifically charged in a complaint under oath, or must be "apparent on the return" of the election precinct "complained of."] The petition before us contains no allegation that the petitioner knows, or even believes, or has reason to believe that fraud has been committed, or that there has been any substantial error exhibited by the election officers, whether apparent or not apparent on the returns. The petitioner merely declares that there are 'discrepancies' manifested. As to one group of election precincts, he complains that the votes returned for some candidates are less than the votes for others, while as to another group of precincts, he complains that the votes for all candidates are the same in number. As to the first group the 'discrepancies' he asserts consist in that the returns of the election officers indicate that a few more ballots were counted for the United States Senator, State Treasurer, Auditor General, Judge of the Superior Court, Member of Congress, State Senator and Members of the Legislature than were counted for the Presidential Electors. Petitioner does not in any manner deny that more valid ballots were cast for some candidates than for others. Counsel for the petitioner admit that their client has no evidence of fraud or of error of any character, unless the mere circumstance recited, that in some divisions there were more valid votes for other candidates than for Presidential Electors, palpably raises a presumption of error. That such a petition is utterly insufficient to justify an order to open the ballot boxes is too plain......to call for......argument."

In addition to the previously mentioned opinion, Judge McDevitt filed a lengthy answer to the petition for the writ of prohibition, in which he takes up many divisions of the Seventh Ward, including those enumer-

ated in the petition to open the ballot boxes, treating each division separately and endeavoring to demonstrate that fraud or mistake was "apparent" (a requirement of the act) on the returns from these divisions, or that there was something in the record before him which justifiably might be taken to show what the act calls "palpable fraud or mistake." "Apparent" means "clear or manifest to the understanding," and "palpable" means "easily perceptible," "obvious," "manifest": Webster's Collegiate Dictionary. It is far from clear that this answer demonstrates any such state of the record; but since the two judges constituting the computation court could not themselves agree upon the matter, the question as to whether the record does or does not present such a state of fact is not here for decision. In the absence of a formal finding by the computation court that either the returns before it or a complaint under oath (Act of May 19, 1923, P. L. 267, 269) shows fraud or mistake, we must assume that no such state of fact was manifested. If, however, actual fraud or mistake occurred in the counting of the votes (even though neither apparent on the face of the returns nor specifically averred) there is ample remedy under the Act of April 23, 1927, P. L. 360, to disclose and correct it before the computation is completed, as will be shown more fully later in this opinion.

Disregarding for the moment the Act of 1927, just mentioned, the law regulating the conduct of boards appointed to compute the returns of an election is well stated in Plains Township Election Returns, 280 Pa. 520, 523, where we recently said: "In a computation proceeding, the power of the common pleas [judges, sitting as a computing board] to correct errors is limited......to cases where......palpable fraud or mistake is specified by the complaint of a qualified elector under oath, or is apparent on the face of the return. The jurisdiction does not extend over matters which do not directly relate to the computation of votes actually cast......or

the correction of fraudulent or erroneous ones,—dishonesty or fraud in making the return, the absence of a return, or error of fact in the return made must be the basis of the computing board's actions. [That board] is not the tribunal to review honest errors of law on the part of election officers, such as may be raised in the case of a contest: for discussion on this point see 28th Congr. Dist. Nom., 268 Pa. 313, 319, 320; In re 15th Division, 22d Ward, 18 Pa. Dist. R. 193, and 25th Division, 47th Ward, 18 Pa. Dist. R. 210. The computation board is given considerable latitude within its jurisdiction as defined by the legislature, and if 'necessary to a just return,'—that is, when investigating alleged or apparent 'palpable fraud or mistake' in the return,—it may direct the opening of ballot boxes and a recount of the votes (Carbondale's Election Returns, 280 Pa. 159); but, as already pointed out, the jurisdiction of the board is measurably restricted, a limited field of power being allotted to it. In the words of a learned Pennsylvania judge, 'The very fact that the decision is to be rendered within three days after the day the returns are brought into court for computation precludes any extended inquiry' (ENDLICH, J., in Bertolet's Case, 2 Pa. Dist. R. 849, 850); and, again, the act expressly provides (1923, P. L. 269) that the 'inquiry [in such cases] shall not be deemed a judicial adjudication to conclude any contest.' The common pleas judges, when acting as a computation board, are for the most part exercising ministerial, and not judicial, functions (for discussion on this point see Thompson v. Ewing, 1 Brewster 67, 79, 82, 85); and, accordingly, their powers must be strictly limited to those granted by the act of assembly." In short, the computation board is not intended as a tribunal to decide nice questions of law, but is created to supervise the treatment of facts as returned by the precinct election boards; and when, on the face of the returns, or by proper averments presented in due time, a state of fact is made to appear which indicates fraud or mistake such

as to render it impossible properly to compute the vote without opening the ballot box in question, the precinct election officers may be called in, and, under the supervision of the board, the box may be opened, to make such investigation as will enable the judges to proceed with the computation. If, however, the computing judges, without any averment of palpable fraud or mistake, or evidence—on the face of the return or otherwise—of such a state of fact, were to open every ballot box where a defeated candidate suspected something wrong, on many occasions computations of the returns would be unduly prolonged, albeit celerity, in order to carry out other provisions of the election laws, is often imperative. Moreover, such delays would be at the cost of other interests demanding the attention of the courts. Section 13 of the Act of May 6, 1909, P. L. 425, as amended by the Act of May 19, 1923, P. L. 267, 269, shows that the law contemplates expedition in computing the returns after an election; it provides that, when precinct election officers are summoned by the computation court to correct "palpable fraud or mistake" in their count, all such questions must be decided by that tribunal "within three days after the day the returns [in controversy] are brought into court for computation." In the present case, no reason is shown for an extension of time, as in the case of Carbondale's Election, 280 Pa. 159, 168.

The refusal to open boxes, in the absence of palpable fraud or mistake on the face of the return or of a sufficient averment indicating that condition of fact, so that the computation court might correct it within the three days prescribed by the Acts of 1909 and 1923, can do no material harm in a case like the present; for, to meet just such a situation, the last legislature passed the Act of 1927, supra. (Counsel for Rooney evidently concluded that the Act of 1927 was the one under which he should have proceeded, for, after the allowance by this court of the rule now before us for disposition, the Court of Common Pleas No. 4 of Philadelphia County was pe-

titioned by the parties on the Rooney side to open a number of boxes in the Seventh Ward, though not in all of the divisions covered by the general order of Judge Mc-Devitt. This was entirely proper, for the stay contained in the allowance of our rule had reference only to the pending proceedings in the computation court.) While the Act of 1927 is in aid of the proper computation of the votes cast at an election, it is an additional remedy, to apply where, as here, no palpable fraud or mistake appears on the face of the returns or was suggested to the board by proper complaints under oath at the time the returns from the divisions in question were brought before it for computation, yet where "three qualified electors" "believe," "upon information which they consider reliable," that "fraud," though "not manifest" in the returns, was committed by precinct officers in counting the vote. When the Act of 1927 is taken advantage of, the work of the regular computation court need not be delayed, for, under this recent statute, the votes cast in the questioned precincts are counted by other judges than those engaged in computing the returns, and the result is certified to the latter. The act liberally provides that boxes may be opened by any court of common pleas "or a judge thereof," of the county in which a questioned precinct is located, upon presentation of a petition alleging the belief that fraud was perpetrated, although such fraud may not be manifest on the return made by the precinct officers. The act further provides, however, that in proceedings thereunder, "every petition...... shall be......accompanied by cash in the amount of fifty dollars......or by a bond signed by the petitioners as principals and by a corporate surety......in the amount of two hundred dollars......conditioned upon the payment to the county treasurer of the sum of fifty dollars......in the event that, upon the opening of the ballot box, it shall not appear that fraud or substantial error was committed." If fraud or mistake is not found to exist, the $50 is forfeited to the public treasury; on

the other hand, if either fraud or "substantial error appears," the cash deposit or the bond is to be returned to the petitioners.

In the present case, no palpable fraud or mistake having been shown in the manner required by the legislation prior to the Act of 1927, any relief in connection with the computation of the vote, by a recount of the ballots at this time, must be had under the additional remedy furnished by the statute passed in that year, for it alone fits the situation. It is a Pennsylvania rule that "In all cases where a remedy is provided or duty enjoined, or any thing directed to be done by an act or acts of assembly,......the directions of the said acts, shall be strictly pursued" (section 13, Act of March 21, 1806, 4 Smith's Laws, 326, 332), and Judge LEWIS is quite right in his suggestion that this rule should be applied to the present case. It is the legislature's prerogative to ordain what rules shall govern the opening of ballot boxes for purposes of computing election returns, and it is the duty of those charged with the responsibility of computing these returns to obey the rules thus provided; particularly is this so when that responsibility is placed upon judges learned in the law. Such rules can in no proper sense be called technical; they are substantial regulations which presumably, in the long run, best serve the public interest; any one who deliberately refuses to obey them breaches the law.

Judge McDEVITT, "having presided over the count" of the ward wherein the divisions in question are located, and "feeling" that there was "sufficient error on the face of the returns" (the only basis for this feeling being the state of affairs already indicated), ordered that "the boxes be opened and the votes recounted," notwithstanding the formal dismissal by the computation board of the petition praying for such relief and the absence of any averment or other showing of palpable fraud or mistake. This order, or attempted order, is general in its terms, and may be construed to cover either the entire Seventh

Ward or only the several divisions thereof particularly designated in the Rooney petition. Whichever view be right, the order comprehends certain election divisions not mentioned in the petitions under the Act of 1927 presented to the court of common pleas No. 4; hence the action there taken does not entirely supersede or render the present proceedings moot.

By the Acts of May 6, 1909, P. L. 425, 430, and of May 19, 1923, P. L. 267, 270, it is provided that the returns from the election precincts in the Counties of Philadelphia and Allegheny "shall be presented to such two or more of the judges of the several courts of common pleas of said counties, respectively, as the judges of said courts......may designate to perform the duty of receiving, computing, and certifying said returns." Under these acts, Judges McDEVITT and LEWIS were designated to receive, compute and certify the returns of the general election held on November 6, 1928. They are both supposed to participate in deciding any controverted matter; if, in performing routine work, one alone sits, temporarily, he, by implied consent of his colleague, represents both, or, in other words, the tribunal as a whole; so, albeit President Judge McDEVITT may have sat alone during the routine computation of the vote in the Seventh Ward (if that is what he means by certifying that he "presided over such count"), this fact would be of no controlling significance, and certainly would not empower him to make an order, against the dissent of his colleague, the effect of which might change the result of the computation in the congressional district here in question. When a legal or semi-legal tribunal consists of only two members, neither one of them can perform an affirmative act changing, or which may change, an existing condition; for it takes a majority of the whole body to do this, and one is not a majority of two. It is a universal rule that when a judicial or semijudicial body is equally divided, the subject-matter with which it is dealing must remain in statu quo: Summers

v. Kramer, 271 Pa. 189, 195. Here, the record shows that Judge McDEVITT, acting alone, directed an order to be entered (against the previously filed proper dissent of Judge LEWIS), thereby assuming powers which he did not possess; such being the case, the common law writ of prohibition, the right to exercise which has never been taken from this court, is the appropriate remedy to restrain him from carrying the attempted order into effect. We ought not, however, to be presented with the necessity of issuing such a writ. The situation with which we are confronted suggests that the common pleas judges of Philadelphia, who are empowered to designate, from time to time, two or more of their number to compute the vote in that county, should, in the future, assign three, rather than two, judges to perform that duty. Since in the present instance this was not done, the situation which has arisen can be met only by the use of the process which we are about to issue.

"The writ of prohibition lies from a superior court, not only to inferior judicial tribunals, but also to inferior ministerial tribunals, possessing incidentally judicial powers, and known as quasi-judicial tribunals": 22 R. C. L. 14. This writ is very generally used in other jurisdictions (see cases cited in 22 R. C. L. 2 et seq.) ; it is an ancient common law process employed by the Court of King's Bench in the exercise of its supervisory powers over subordinate tribunals (22 R. C. L. 4), and the Supreme Court of Pennsylvania is possessed of the common law powers of the Court of King's Bench, except where such powers have been taken from us by constitutional or statutory provisions: Summers v. Kramer, supra, 197; Hanover Twp. School Directors, 290 Pa. 95, 105. While the writ will not be issued where there is another adequate remedy provided (see annotations to Walcott v. Wells, 9 L. R. A. 59), and usually an appeal, accompanied by an application for supersedeas, serves all the practical purposes of this process, yet where, as here, the only final order entered by the computation

board in relation to the matter in controversy favored the complainant now before us, and the record shows that, owing to a disagreement between the two judges who compose that tribunal, it is deadlocked for the purpose of performing the affirmative act asked of it, and one member of the board proceeds of his own accord to make and execute the very order formally refused by his tribunal, thus acting beyond the power vested in him by law, the writ of prohibition is not merely the proper but seems the only adequate remedy to apply.

The rule is made absolute; let the writ issue.