In re APPOINTMENT OF A SCHOOL DIRECTOR FOR REGION NO. 9 OF the KEYSTONE CENTRAL SCHOOL DISTRICT.

Appeal of George MILLER, Appellant.

In re VACANCY—A PETITION OF RENOVO AREA CONCERNED TAXPAYERS.

Appeal of RENOVO AREA CONCERNED TAXPAYERS, Appellant.

Commonwealth Court of Pennsylvania.

Submitted July 26, 1996.
Decided Sept. 9, 1996.
Reargument Denied Oct. 17, 1996.

Valerie G. Zim, for Appellants, Renovo Area Taxpayers.

Larry E. Coploff, pro se, Appellee.

Before COLINS, President Judge, and PELLEGRINI, J., and KELTON, Senior Judge.

PELLEGRINI, Judge.

The Renovo Area Concerned Taxpayers (Concerned Taxpayers) appeal an order of the Court of Common Pleas, County of Clinton, denying Concerned Taxpayers' petition to vacate the appointment of David S. Miller (Miller) to School Director of Region 9 of the Keystone Central School District (District).

On November 16, 1995, Kenneth Tarr, the District's School Board Director for Region 9, a Democrat, resigned. The District's eight remaining board members (Board) attempted to fill the vacancy as provided for in Section 315 of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 227, *as amended,* 24 P.S. § 3-315. This provision states that:

> In case any vacancy shall occur in any board of school directors by reason of death, resignation, removal, from the district, or otherwise ..., in a school district of the second, third or fourth classes, the remaining members of the board of directors shall, by a majority vote thereof, fill such vacancy from the qualified electors of the district within thirty days thereafter ...

Only David S. Miller, a Republican, and Edythe L. Lisi, a Democrat, sent letters to the Board seeking the appointment.

Due mostly to a split among Board members on school consolidation, the Board was unable to agree on whom to appoint. If the Board does not appoint a School Director within 30 days, Section 315 of the Public School Code then allows:

> the court of common pleas of the proper county, upon the petition of ten or more resident taxpayers, shall fill such vacancy by the appointment of a suitable person from the qualified electors of the district ... until the first Monday of December after the first municipal election occurring more than sixty (60) days after the vacancy shall have occurred. At such election an eligible person shall be elected for the remainder of the unexpired term. When any member of a board of school directors heretofore or hereafter enlists or is inducted into the military or naval forces of the United States in time of war, a temporary vacancy shall be declared, which shall be filled by the remaining members of the board or the court, as the case may be from the qualified electors of the district, until the return of such member of the board from the military or naval service, or until the expiration of the term for which he shall have been elected, whichever shall be the shorter period.

After 30 days had passed, 12 resident taxpayers (not Concerned Taxpayers) filed a Petition for Appointment of a School Board Director in the Court of Common Pleas of Clinton County. All of the District's municipalities lie within Clinton County except for one township in Potter County and two townships in Centre County. President Judge Richard N. Saxton of the Court of Common Pleas of Clinton County, without a hearing, ordered Miller's appointment to the position of Region 9 School Board Director. Concerned Taxpayers filed a Petition to Vacate Miller's appointment, which the trial court dismissed. Concerned Taxpayers then appealed to the Pennsylvania Supreme Court, which transferred the appeal to this court.

Initially, Concerned Taxpayers contend that President Judge Saxton was required to disqualify himself from making the appointment because his daughter is employed by the District. Canon 3(C)(1)(c) of the Code of Judicial Conduct provides:

(C) Disqualification

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

\*  \*  \*  \*  \*  \*

(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a substantial financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

Whether a judge believes disqualification is necessary is a matter of individual discretion and conscience, and only the judge being asked to recuse him or herself may properly respond to that request. *Commonwealth v. Jones*, 541 Pa. 351, 663 A.2d 142 (1995). A judge's decision not to recuse will only be reversed if it was an abuse of discretion. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985).

Ignoring whether she was a minor or living in the household, that President Judge Saxton's daughter worked for the District is insufficient alone to warrant recusal. For recusal to be mandated, Concerned Taxpayers would have to show that the daughter had a substantial financial interest that could be significantly affected by the outcome. Having not demonstrated an effected substantial interest on the part of the daughter, Concerned Taxpayers have not shown any abuse of discretion occurred when President Judge Saxton refused to disqualify himself. *See Randt v. Abex Corp.*, 448 Pa.Super. 224, 671 A.2d 228 (1996).

Concerned Taxpayers also contend that Miller's appointment was improper because the judges from all the counties in which the District operates must participate in making the appointment. Initially, we point out that the Public School Code confers

874

the power to appoint upon the court of common pleas of "the proper county",[1] not "proper counties". If the General Assembly desired a joint session of all the judges of all the counties in which the District operated to make an appointment, it would have said so. Having not said so, there is nothing in the Public School Code that forecloses that judge(s) of a single county make the appointment. As to the Court of Common Pleas of Clinton County being the "proper county" in which to bring the action, there is no doubt that it is the proper county considering that 26 of the District's 29 municipalities are in Clinton County; the District's administrative offices are in Clinton County; and 16 of the District's 17 schools are in Clinton County.

If Clinton was the proper county in which the Petition to Appoint should have been filed, Concerned Taxpayers argue[2] that the other active judge, Judge J. Michael Williams, also had to participate in the appointment. For that proposition, Concerned Taxpayers rely on *In re Hanover Township School Directors*, 290 Pa. 95, 137 A. 811 (1927). In that case our Supreme Court, commenting on when a court by statute is to remove and appoint public officials, stated:

> In the recent case of *Moritz v. Luzerne County*, 283 Pa. 349, 351, 129 A. 85, we said: "The word 'court' in a statute is to be understood as meaning a tribunal officially assembled under authority of law at an appropriate time and place for the administration of justice, and not merely a judge thereof"; that "whether an act is to be performed by one or the other is generally determined by the character of the act, but whenever it is a statutory power or duty conferred or prescribed upon the court, it can only be discharged by the assembled tribunal, however composed, whether of one judge or several." Then, construing the statute there involved, we added these

significant words, "Take, for instance, the power to appoint and remove; such power is conferred by the statute, not upon the judge, but in express terms upon the court." Again, in McCormick's Contested Election, 281 Pa. 281, 285, 126 A. 568, we said: "Where a court is acting as a whole or in banc, all the judges constituting the tribunal, or as many of them as may be available at the time, ought to sit together." Finally, in *Carney v. Penn Oil Co.*, 289 Pa. 588, 137 A. 799, we referred to a motion to have a matter, properly determinable by the court in banc, acted on by that body, as a "perfectly proper motion", which should have been allowed, and we reversed the court below for not granting it.

Black's Law Dictionary, under the word "Banc", defines a court in banc thus: "The full bench, full court"; and "sitting in banc" as "a meeting of all the judges of a court, usually for the purpose of hearing arguments on demurrers, points reserved, motions for new trial, etc., as distinguished from the sitting of a single judge at the assizes or at nisi prius and from trials at bar." *To this definition, according to the Pennsylvania decisions, should be added, "and for the purpose of exercising the power of removal and appointment of public officials, when such power is conferred by statute upon the court."*

The removal and appointment of public officials is in the nature of a political power which, in certain instances, according to the law of Pennsylvania, may be conferred upon the courts, but it is the sort of responsibility, which must be shared by all the judges of the court acting in banc, or as many of them as are available for the purposes in any particular instance. (Emphasis added).

1. The Act further states that if a vacancy is not filled by the Board within 30 days, the court of common pleas of the proper county shall fill such vacancy.

2. Concerned Taxpayers also attempt to raise for the first time on appeal that: (1) the initial petition to appoint was defective since the petitioners did not list their addresses on it and petitioners were not residents of the region in which the

vacancy occurred; and (2) senior judges from surrounding counties which the District encompasses should have been included in the appointment decision. Because issues not previously raised are waived, we will not consider those arguments. *See* Pa. R.A.P. 302; *Perin v. Board of Supervisors of Washington Township*, 128 Pa. Cmwlth. 313, 563 A.2d 576 (1989).

290 Pa. 95, 137 A. 811 (1927). Because of this language, if *Hanover* is controlling, we would agree with Concerned Taxpayers that a single judge could not appoint, only all the judges available sitting *en banc*.[3] With the passage of Article V of the Pennsylvania Constitution, however, the court system in Pennsylvania was replaced with a unified judicial system. As part of that change, Article 5, Section 4 abolished the "old" common pleas courts that existed in 1927 when *Hanover* was decided and replaced them with "new" consolidated common pleas courts that included the various separate trial divisions that previously existed. Implementing the Constitution, the Judicial Code[4] defines "court" as "[i]nclud[ing] any one or more of the judges of the court who are authorized by general rule or rule of court, or by usage, to exercise the powers of the court in the name of the court." 42 Pa.C.S. § 102. Unlike the previous definition expressed in *Hanover*, this provision allows a single judge to make the appointments unless there is a showing that there is a "general rule", "rule of court" or "usage" that would preclude it. Nothing in the record indicates that a rule or usage exists that would foreclose a single judge from making the appointment acting on behalf of the court of common pleas as President Judge Saxton did here in this instance.

 Finally, Concerned Taxpayers argue that the court should have held hearings and heard testimony from the candidates and the public to aid in its decision-making. They also argue that President Judge Saxton failed to preserve the will of the electorate by replacing the former Director's policies with a candidate with opposing views and from the opposing party. However, while nothing forecloses that, prior to appointment, a hearing be held or that the court of common pleas take into consideration the former District's member's views, policies and political affiliation, nothing in the Public School Code re-quires the common pleas court to do so either.

Because no abuse of discretion occurred when President Judge Saxton refused to disqualify himself and the appointment was made in accordance with the Act, we affirm.

### ORDER

AND NOW, this 9th day of September, 1996, the order of the Court of Common Pleas, County of Clinton, dated December 19, 1995, No. 1419–95, is affirmed.

---

3. It is argued that Judge Williamson's previous position on the District's Board until 1993 and his public opinions concerning the school consolidation issue would have inevitably led to his not participating in any appointment proceeding. Just as President Judge Saxton initially determines whether he has to recuse, Judge William-son also has to initially make the determination, and, for that reason, we can presume that he would not have been "available" to participate.

