# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE, AND HON. STEPHEN ZAPPALA, SR., | : | No. 100 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated October 5, |
| Appellants | : | 2016 at No. 517 MD 2016 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellee | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE TODD**                                            **DECIDED: October 25, 2016**

Underlying the present appeal is the yet-unresolved question of whether the ballot language — seeking to raise the mandatory retirement age of judges and justices from 70 to 75 — fairly, completely, and accurately apprises the voters of the constitutional change they are being asked to approve. When we last faced this question in Sprague I[1], I came to the considered conclusion that, in failing to inform the voters that they were *increasing* the mandatory retirement age, not *imposing* a mandatory retirement age for the first time, this ballot language was unconstitutionally misleading.[2] [3] However, our Court split 3-3 in that case, issuing an order that we were

---

[1] Sprague v. Cortés, 75 MAP 2016, 2016 WL 4595403 (Pa. filed Sept. 2, 2016) ("Sprague I").
[2] The ballot question states:
(continued…)

"without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained." <u>Sprague I</u> (*per curiam* order). As a result, regardless of what one concludes about the merits of the important constitutional question at issue, we manifestly did not answer that question. Nevertheless, those Justices in favor of affirmance would transmogrify our non-decision into a preclusive ruling on the merits, and affirm the erroneous Commonwealth Court order below. <u>See</u> Opinion in Support of Affirmance ("OISA"). By stark contrast, and for the following reasons, I would reverse the Commonwealth Court's order and remand for further proceedings.

As noted by the OISA, the constitutional challenge to the ballot language was brought by Appellants in the Commonwealth Court, and this Court assumed extraordinary jurisdiction in <u>Sprague I</u>, culminating in a *per curiam* order from this Court. As the Court was deadlocked — with three Justices concluding Appellants were correct in their claim that the ballot language was misleading and three Justices concluding they were not — we could agree on only one thing, the following order:

> **AND NOW**, this 2nd day of September, 2016, the Court being evenly divided in its determination as to which parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained. <u>See Creamer v. Twelve Common Pleas Judges</u>, 281 A.2d 57 (Pa. 1971) (holding that where this Court was evenly divided in a King's Bench original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order

---

(…continued)

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

[3] <u>See Sprague I</u> (Opinion in Support of Granting Plaintiffs' Application for Summary Relief and Denying Defendant's Application for Summary Relief by Todd, J., joined by Dougherty, J., and Wecht, J., in part).

noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter).

Sprague I (*per curiam* order).  After this Court subsequently declined to remand the matter to the Commonwealth Court[4], Appellants refiled the same constitutional challenge in that court.  The Commonwealth Court rejected this challenge, without addressing the merits, and the issue presently before us is whether that court erred in rejecting Appellants' new filing on the grounds that this Court already decided the matter in Sprague I.

For reasons of efficiency and fairness, courts rightly preclude the same parties from re-litigating questions that have already been decided.  Here, citing our prior order in Sprague I, the Commonwealth Court rejected Appellants' present suit under the doctrine of *res judicata*.  In doing so, it set forth that doctrine's basic and well established governing principles:

> [It is] a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any *final, valid judgment on the merits* by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action.

Sprague v. Cortés, 517 M.D. 2016 at 5 (Pa. Cmwlth. filed Oct. 5, 2016) (quoting R/S Fin. Corp. v. Kovalchick, 716 A.2d 1228, 1230 (Pa. 1998)) (emphasis added).  Stated differently, to apply the doctrine of *res judicata*, "the issue or issues must have been actually litigated and determined by a valid and final judgment."  County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd., 678 A.2d 355, 359 (Pa. 1996).

While there is no doubt that our order in Sprague I was final in the sense that it was this Court's concluding pronouncement in the matter before us, it was decidedly not *a judgment on the merits*, nor did we *actually litigate or determine* anything.  In the prior

---

[4] This author and Justice Wecht dissented.

matter — as now — Appellants posed a simple legal question: does the ballot language satisfy constitutional standards for clarity? This divided Court could not and did not answer that question. That observation, at its simplest, answers the *res judicata* question; and the case cited by the OISA, which I discuss below, does not alter that analysis. It was thus plainly erroneous, in my view, for the Commonwealth Court to bar Appellants' present suit on the grounds that we *had* answered the constitutional question.

This straightforward interpretation of our prior disposition is also dictated by the language of our *per curiam* order in Sprague I. Critically, we noted therein that, in light of our 3-3 deadlock, we were "without authority to grant relief." Appellee, the Commonwealth Court, and the OISA ignore the import of this explicit qualifying language. Because of the deadlock in Sprague I, this Court could agree on only one thing: that we were unable to act. Contrary to the suggestions of the OISA, we did not "declin[e]" relief, nor did we decide Appellants were "not entitled to relief." See OISA at 7. Instead, we determined that we lacked *authority* to grant relief. A court lacking the authority to act lacks the *ability* to act. Indeed, this point was explicitly made in Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (1971), the sole precedent we cited in our order in Sprague I. There, analogizing our 3-3 deadlock in that case to a tribunal containing two members who were likewise deadlocked, we stated:

> When a legal or semi-legal tribunal consists of only two members, *neither one of them can perform an affirmative act changing, or which may change, an existing condition; for it takes a majority of the whole body to do this, and one is not a majority of two*.

Id. at 58 (quoting In re First Cong. Dist. Election, 144 A. 735, 739 (Pa. 1928)) (internal quotation marks omitted and emphasis added). Thus, our declaration in Sprague I that

we lacked the authority to act, along with our citation to Creamer, demonstrates that we took no substantive action — we were unable to act on the merits.

Moreover, if there could be any ambiguity — and there is none — about the effect of our pronouncement that we were "without authority to grant relief," it was resolved by our statement immediately following: "the *status quo* of the matter prior to the filing of the lawsuit is maintained." These words can only mean that, because of our deadlock, we intended to return the parties to the status they occupied at a time prior to our intervention. Again, our citation to Creamer proves this. Therein, as in Sprague I, we sat in our original jurisdiction, and stated:

> It is a universal rule that when a judicial or semi-judicial body is equally divided, the subject-matter with which it is dealing must remain in statu[s] quo.

Id. at 58 (quoting In re First Cong. Dist. Election, 144 A. at 739) (internal quotation marks omitted). That point bears emphasis: we stated that the *subject-matter* with which a deadlocked original jurisdiction court is dealing *must remain in the status quo*. Obviously, prior to our intervention in Sprague I — the *status quo* — the parties were unconstrained by *any* court's pronouncements on the constitutional issue at hand, and Appellants were unencumbered by any judgment on the merits. Yet, the OISA looks past these clear declarations of non-action and discovers not just a judgment, but *a judgment on the merits*. Gazing through the looking glass, the OISA strains to conclude that, in Sprague I, we simultaneously issued a judgment on the merits *and* returned the parties to the *status quo*. The illogic of this position is patent. A court can issue a judgment on the merits. A court can restore the *status quo* prior to litigation. It cannot do both at the same time.

Thus, basic principles of *res judicata* and the explicit text of our order should be the simple end of this appeal, and indicate summary reversal. However, even were I to

accept the characterizations of the OISA that our order in Sprague I was a *denial* of extraordinary relief — rather than a simple deadlocked inability to act and restoration of the *status quo* — this Court has explicitly held that an order denying extraordinary relief, without more, has no *res judicata* effect. In County of Berks, supra, we addressed the contention that our denial of an application for extraordinary relief precluded a latter suit by the same parties on the same question in the Commonwealth Court. Finding the matter to be one of first impression, we surveyed other jurisdictions, and noted:

> The general rule is that where the extraordinary jurisdiction of a court is unsuccessfully invoked and the court does not expressly adjudicate the matter on the merits, then there is no preclusive effect and the petitioning party is free to pursue his claim in any appropriate forum.

Id. at 359 (citing cases). Recognizing that there are reasons beyond the lack of legal merit for this Court to deny extraordinary relief, we held that an *order without opinion* denying such relief had no preclusive effect:

> Therefore, we now hold that where this court has issued an order without opinion denying extraordinary relief, that order alone is insufficient to establish that there has been a full and final adjudication of the claims raised. Thus, because the bar of res judicata is inapplicable to this matter, Appellees' first claim does not provide a basis for affirming the decision of the Commonwealth Court.

Id. Thus, even if our order in Sprague I were viewed as a denial of relief, on this additional precedential authority, the Commonwealth Court erred in rejecting Appellants' suit on the basis of *res judicata*.[5]

---

[5] The OISA attempts to evade the import of County of Berks by noting that, in that case, we issued an order denying an application for extraordinary relief, whereas, in Sprague I, we assumed extraordinary jurisdiction, and ultimately issued an order which the OISA contends had the effect of denying extraordinary relief. OISA at 10. From the point of view of the parties, and, more critically, for purposes of *res judicata*, I see no distinction. In either scenario, relief is denied by simple order. Moreover, I disagree with the OISA's superficial contention that the issuance of multiple opinions in Sprague I, which even the (continued…)

The OISA cites <u>Hartman v. Greenhow</u>, 102 U.S. 672 (1880), in support of its contention that our *per curiam* order was a "final judgment on the merits for purposes of *res judicata*." OISA at 8. First, caselaw from the Supreme Court of the United States does not control our Court's determination of the preclusive effect of our orders on the adjudication of state constitutional claims, inasmuch as our Court is the final arbiter of such pure questions of Pennsylvania law. Moreover, as also observed by Justice Wecht[6], this case does not establish the novel jurisprudential proposition offered by the OISA.

In <u>Hartman v. Greenhow</u>, the petitioner sought a writ of *mandamus* from the Supreme Court of Appeals of Virginia to compel the treasurer of Richmond to accept petitioner's tender of state issued bonds as payment of his state tax obligations without deducting additional state tax from their redemptive proceeds. Petitioner claimed that the statute under which the treasurer asserted authority to make this deduction violated the Contract Clause of the United States Constitution. The Virginia Supreme Court divided 3-3 on the merits of that question, which, under Virginia law, constituted a denial of the issuance of the writ. The narrow jurisdictional question which the United States Supreme Court addressed as a threshold matter, from which the OISA's quotation derives, was whether the split decision of the Virginia Supreme Court constituted "a final judgment or decree" under the Judiciary Act of 1787, and the federal high Court concluded that it did since the effect of the judgment was to deny the writ of *mandamus* and to finally conclude that litigation. Importantly, though, the high Court did not purport to opine on whether the doctrine of *res judicata* barred the parties from *re-litigating* the

<hr>

(…continued)
OISA recognizes are non-precedential, <u>see</u> OISA at 3, makes any difference for purposes of application of <u>County of Berks</u>. Our order in <u>Sprague I</u> was issued purely under the authority of <u>Creamer</u>.
[6] <u>See</u> Opinion in Support of Reversal (Wecht, J.) at 3 n.2.

issue of the propriety of the denial. Indeed, the high Court went on in its opinion to conclude that the statute was in fact repugnant to the United States Constitution and granted petitioner relief. The high Court's ruling, therefore, has no bearing on the question of the preclusive effect of an order of a state's highest court on further litigation in the tribunals of that state, which is the issue we are considering in the present appeal.

Finally, I must respond to the OISA's waiver and constitutional structure arguments. The OISA claims that Appellants' choice to seek extraordinary relief from our Court at the time they originally commenced their action in the Commonwealth Court somehow precluded them from further seeking relief in the Commonwealth Court after our Court could not render a decision on their claims. The OISA deems Appellants' effort to seek a final determination from this Court regarding a paramount question of constitutional interpretation "tactical litigation," contending:

> Appellants were given every opportunity to have the Commonwealth Court adjudicate the substance of their legal challenge to the ballot question, but Appellants voluntarily and purposefully waived such opportunity by seeking this Court's extraordinary jurisdiction pursuant to Section 726 of the Judicial Code . . . thereby forfeiting their right to appellate review of an original jurisdiction decision.

OISA at 10. Respectfully, what Appellants were seeking from the Commonwealth Court with their new filing in this matter was *not* appellate review of our *per curiam* order, but, rather, what they have always requested: an adjudication on the merits.

When Appellants asked that our Court assume extraordinary jurisdiction, they did so with the reasonable expectation our Court would resolve the constitutionality of this ballot question with a ruling on the merits of their claims; however, our Court proved unable to act. The OISA's assertion that Appellants' right to have this matter now heard in the Commonwealth Court was forfeited, even though our Court was unable to render a decision on the merits of their claims, is unsupported by either Article V, Section 2(a)

of our Constitution, the plain language of Section 726 of the Judicial Code, prior precedent from our Court, or the language of our *per curiam* order in Sprague I. Indeed, Section 726 affords our Court maximum flexibility after we have exercised our extraordinary jurisdiction to "otherwise cause right and justice to be done." 42 Pa.C.S. § 726. Here, causing right and justice to be done requires an adjudication of this important issue on the merits.

Furthermore, while it is certainly true that Article V, Section 2(a) of our Constitution vests the supreme judicial power of the Commonwealth in this Court, as the OISA avers, the vesting of such great power in our Court also creates the highest obligation to exercise that power to achieve fundamental justice, not only for the individual litigants, but for all of the people of this Commonwealth. Instead, we are permitting the Commonwealth Court's erroneous decision on *res judicata* to stand, and a constitutional question to go unanswered.

Today, as in Sprague I, this Court is deadlocked, for reasons I again find hard to fathom. Although the present issue before us is a purely procedural one, by contrast, the underlying constitutional question could not be more important, as it concerns the people's power to amend their Constitution, and specifically the question of whether they have been fairly, completely, and accurately apprised of a proposed change to our charter. With today's inaction by this Court, it appears that the present parties, and more importantly the public, will go to the polls on November 8 without ever receiving an answer to that fundamental question.

Justices Dougherty and Wecht join this opinion.