**BRADLEY LUMBER CO. OF ARKANSAS et al. v. NATIONAL LABOR RELATIONS BOARD et al.**

**No. 8054.**

Circuit Court of Appeals, Fifth Circuit.

June 5, 1936.

Roberts C. Milling, of New Orleans, La., and Robert H. Kelley, of Houston, Tex., for appellants.

Robert B. Watts, Asst. Gen. Counsel, National Labor Relations Board, of Washington, D. C., and David C. Shaw, Atty., National Labor Relations Board, of New Orleans, La., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Bradley Lumber Company (called herein the Lumber Company) and Bradley Lumber Sales Company (called the Sales Company), both corporations of Arkansas, filed in the District Court for the Eastern District of Louisiana a bill to enjoin the taking of testimony by C. H. Logan, the Regional Director for the National Labor Relations Board, touching a complaint put forward by Logan for the Board charging the Lumber Company and Sales Company with unfair labor practices in discharging certain employees and touching a petition made by a labor union against the Lumber Company for an investigation by the Board of a controversy about representation of the employees in bargaining. Joined as defendants with Logan were the Board and the three persons who compose it and its local attorney. Logan and the attorney were alleged to be inhabitants of New Orleans, in the district where the bill was filed, the others of the District of Columbia; but the Board was alleged to have a regional office in New Orleans in charge of Logan upon whom service of the Board might be made. A temporary restraining order was issued, and a hearing for interlocutory injunction appointed. The Board and its members appeared specially by attorney to move to quash the subpœna as to them on the grounds that the Board is not subject to be sued in a District Court, that they had not been validly served by service on Logan in the New Orleans office, and that none of them resided in Louisiana and were not subject to suit or service there. Logan moved to dismiss the bill as to him because no irreparable injury cognizable in equity was alleged, because there was a plain and adequate remedy at law under the National Labor Relations Act (29 U.S. C.A. § 151 et seq.), and because the act was constitutional and authorized what he was doing, and because at last he was not empowered or intending to issue any order or take any action against the Lumber Company or Sales Company. He also answered to the merits. Upon the hearing the court dismissed the Board and its members from the suit without prej-

udice. It also dismissed the bill as against Logan and the attorney for want of equity. The Lumber Company and Sales Company appeal from these judgments.

██ Appellants concede that they cannot sue or serve the members of the Board in Louisiana, and since they refused to appear, that they were rightly dismissed from the suit. But appellants contend the Board itself is subject to suit in Louisiana where it has established a regional office, and that it has been rightly served through its Regional Director there. The Board is created by section 3 of the National Labor Relations Act of July 5, 1935, 49 Stat. pp. 449, 451 (29 U.S.C.A. § 153). Its purpose and function is to administer that act, though it proceeds also in a quasi judicial way in hearing evidence and making findings, which however it cannot by itself enforce. It is not expressly made a corporation, but it is an entity, acting by a quorum, and. having a seal which is to be judicially noticed. It can appoint various agents, including attorneys who at its direction "may * * * appear for and represent the Board in any case in court." Section 4 (29 U.S.C.A. § 154). "The principal office of the Board shall be in the District of Columbia, but it may meet and exercise any or all of its powers at any other place." Section 5 (29 U.S.C.A. § 155). By section 10 (e) of the act (29 U.S. C.A. § 160 (e), the Board may petition the Circuit Courts of Appeal, and the District Courts in some circumstances, to enforce its orders, and by section 10 (f), 29 U.S.C.A. § 160 (f) it may be proceeded against by persons aggrieved by a final order in the Circuit Courts of Appeals in the District where the unfair labor practice was alleged to be engaged in, or where the aggrieved person resides, or in the District of Columbia. To the extent the Board is thus made a legal entity distinct from its members as individuals, which may sue and be sued in respect of its appointed activities, it is located in the District of Columbia and cannot be called on as such to answer in the courts elsewhere except as specially provided by law. Section 10 (f) provides that a final order may be attacked by impleading the Board either in the District of Columbia, or in a Circuit Court of Appeals of the circuit where the aggrieved person resides or the subject-matter of the order arose. This provision does not apply here, since there is as yet no final order, and since the aggrieved persons do not reside in the Eastern District of Louisiana, nor are the labor practices concerned alleged to have arisen there, nor was a Circuit Court of Appeals entered. Supposing that a court of the District of Columbia can in a proper case restrain the Board from exceeding its jurisdiction before it makes a final order, the Board is not under the law made answerable elsewhere than at its official home until it has made a final order. Since the Board was not suable in the District Court of the Eastern District of Louisiana, we need not pass upon the sufficiency of the service on it there. The Board was properly dismissed from this suit.

██ If Logan, as the bill contends, is about to do an injurious thing, unjustified by a valid law or a valid authority from the Board and of a sort which equity is accustomed to restrain, the District Court of his domicile can enjoin him from so doing although the Board for whom and in whose name he is acting cannot be reached by its process. Ryan v. Amazon Petroleum Corporation (C.C.A.) 71 F.(2d) 1; Rood v. Goodman (C.C.A.) 83 F.(2d). 28. But as to him the court rightly held that no sufficient case in equity appears. It cannot be maintained, as the bill contends, that the act creating the Board, and authorizing it to cause to be done such things as Logan is doing, is wholly and palpably beyond the constitutional power of Congress. For a long period Congress has considered and legislated upon difficulties relating to labor unions and strikes as burdening and impeding interstate and foreign commerce. That they may be constitutionally regulated in much the same way as this act proposes when affecting interstate railroad transportation was decided in Texas & New Orleans R. R. Co. v. Brotherhood, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. But interstate railroad transportation is only one field of interstate commerce. Other modes of transportation of person and property, interstate distribution of goods by pipe line, and of information by telephone, telegraph, and radio are other fields. Manufacture, mining, and agriculture in themselves are not interstate commerce although the product will likely be sold in or shipped to another state, but it does not follow that labor troubles in connection with such enterprises as plaintiff and its alleged subsidiary are engaged in, may

not conceivably burden it. In many operations besides railroad transportation labor troubles can, and the Congress has found in the recitals of the act that they do, impede and hinder directly interstate commerce actually in progress. Compare United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963; Bedford Stone Co. v. Stone Cutters' Association, 274 U.S. 37, 47 S.Ct. 522, 71 L.Ed. 916, 54 A.L.R. 791. The act (section 15 [29 U.S.C.A. § 165]), specially declares the will of Congress that although some provision of or its application to some persons or circumstances be found invalid, it is not to be affected in its other provisions or its application to other persons or circumstances. Therefore a demonstration that in some of its provisions the act goes farther than Congress constitutionally can, will not destroy it. We must treat the act as having a field for constitutional application, and the Board as a body having a constitutional function. Logan has as an agent of the Board an authority and a duty, and is entitled to the presumption that he will attempt to do only his legal duty, and he may not be treated as a mere interloper and meddler in the affairs of appellants.

■ We express no opinion about this controversy. The relation of the appellants to each other and of their operations to interstate commerce, and the consequent jurisdiction under the act of the Board over them, we think is initially for the investigation of the Board itself, and not to be contested with a Regional Director before any District Court that may get jurisdiction of his person. It is to be assumed that the Board, if its jurisdiction is specially contested, will inquire into that first and refrain from further action if it has no jurisdiction. We do not think, as is argued, that appellants' appearance before the Regional Director or the Board at a hearing or the submission of evidence by them will waive an objection duly taken to the jurisdiction. The rules of procedure adopted by the Board expressly say that. Nor do we think that the Board's findings of the facts on which jurisdiction rests will conclude a court when reviewing a final order under the procedure fixed by the act,

but under a proper construction of the act jurisdictional findings will be subject to full judicial review. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598. The appellants can have a recognition of all their just rights under the scheme of procedure set up by the act. Even in advance of a final order by the Board, jurisdiction can regularly be brought under judicial scrutiny, because no subpœna can be enforced nor any document or book be compelled to be produced, nor any other order enforced save by appeal to a court, which would then and there refuse to sanction or aid any clear usurpation. A bona fide resistance in such matters in order to secure a court test would not in our opinion come within the penal provisions of section 12 of the act (29 U.S.C.A. § 162) as being a willful impeding, resisting, or interfering with the Board or its agents in the performance of their duties. No doubt an investigation may, as the bill asserts, stir up some feeling among employees and cause some inconvenience by taking witnesses from their work, but these things are incident to every sort of trial and are part of the social burden of living under government. They are not the irreparable damage which equity will interfere to prevent; and a suit in equity would not wholly obviate them. See Richmond Hosiery Mills v. Camp (C.C.A.) 74 F.(2d) 200; Associated Press v. Herrick, Regional Director (D.C.) 13 F.Supp. 897.

■ It is urged that the bill ought to be retained because of its prayer for a declaratory decree concerning the matter of the Board's jurisdiction over appellants. We do not think so. The new power to make a declaratory decree does not authorize a court of equity by declaration to stop or interfere with administrative proceedings at a point where it would not, under settled principles, have interfered with or stopped them under its power to enjoin. The declaratory decree is a useful form of remedy, but the statutory provision for it (Declaratory Judgment Act, 28 U.S.C.A. § 400) does not enlarge the scope of equity jurisdiction to permit its application to controversies which have not yet reached the judicial stage. See Gully v. Interstate Natural Gas Co. (C.C.A.) 82 F.(2d) 145.

Judgment affirmed.