**CONDENSER CORPORATION OF AMERICA v. DELANEY et al.**

**CORNELL–DUBILIER CORPORATION v. SAME.**

District Court, D. New Jersey.
March 22, 1937.

Merritt Lane, of Newark, N. J., and Abraham J. Rosenblum, of New York City, for plaintiffs.

Charles Fahy, Gen. Counsel, of Washington, D. C. (David A. Moscovitz, of Washington, D. C., of counsel), for National Labor Relations Board.

CLARK, District Judge.

We are advised by counsel for the National Labor Relations Board · of their intention of postponing any further hearings in the above-entitled cases until after the filing of the decision of the United States Supreme Court in the Wagner Act (29 U.S.C.A. § 151 et seq.) litigation now before it. That being so, the bills asking for injunctive relief fall, so to speak, of their own weight. Injury does not follow upon inaction.

In dismissing the bills, however, we wish to record our agreement with that weight of authority which, to quote the most recent opinion in the case of Edwin A. Elliott, Regional Director of the National Labor Relations Board et al. v. El Paso Electric Company et al., in the Fifth Circuit Court of Appeals, March 18, 1937, holds: "The investigation by the Board may cause some expense and inconvenience, but it is not the irreparable damage which equity will interfere to prevent"; and see, also, Precision Castings Company, Inc., v. Boland et al. (C.C.A.) 85 F.(2d) 15; Alexander Smith & Sons Carpet Company v. Herrick et al. (C.C.A.) 85 F.(2d) 16; E. I. DuPont de Nemours & Co. and DuPont Rayon Company v. Boland et al. (C.C.A.) 85 F.(2d) 12; Bradley Lumber Company of Arkansas et al. v. National Labor Relations Board et al. (C.C.A.) 84 F.(2d) 97, certiorari denied October 12, 1936 (57 S.Ct. 21, 81 L.Ed. ——); Carlisle Lumber Company v. Hope et al. (C.C.A.) 83 F.(2d) 92.

We seem to have been admonished by our legal superiors for our recently attempted use of the injunctive process to insure the right of peaceful picketing. Ordinarily we should pass such admonishment as part of the necessary give and take of all appellate procedure. In this particular instance we are disturbed because we have always been intellectually opposed to an indiscriminate resort to the most powerful weapon in the legal armory. It is true that in the case we speak of, American Civil Liberties Union v. Daniel Casey et al., the moving party was the wage-earning half of the industrial ·partnership and that the contrary is so here. Plainly in a government of laws this can make no difference.

We have felt strongly about one-judge injunctions in constitutional cases. As this feeling long antedates current matters or current trends, it may not be inappropriate to quote its first expression (August 10, 1928). In the case of United States v. Mayor and Council of City of Hoboken, N. J., 29 F.(2d) 932, at pages 936 and 937, we said:

"Even the most cursory study of the political literature of the time and the debates in Congress on the Judiciary Act explains that significance. The Fathers, or many of them, were afraid of a central government, and were reluctant to intrust too much power to its courts. Obviously, that great power inherent in the Chancellor must be defined by them, rather than by the judges they feared. So we find them saying (we give it as of to-day, because the only change is the substitution of 'in any court' for 'in either of the courts') :

" 'Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law.' Title 28, § 384, U.S.C.A.

"In our humble opinion, this provision should be made into a wall motto or desk emblem, in the style of the high-powered executive, and placed in the chambers of every federal judge upon his appointment. We say this because, in our view, the present attitude of some of the courts towards this greatest of all their powers has read into the emphatic prohibition of that early Congress—reiterated in the Revision of 1911 (March 3, 1911, 36 Stat. 1163)—a proviso which leads them to base their action on what appears to them to be the *superiority* of the one remedy over the other."

And again: "In the case of the exercise of this injunctive power by the federal courts, a further and equally serious consequence threatens. That is the ousting of the state from the consideration of the particular matter, either in its judicial or in its administrative departments, or in both. This court reiterates the views expressed

three years ago in a water rate case. It might add that it feels that events which have transpired since then have only served to confirm its conviction in that regard."

We call special attention to the reference to the "administrative departments." Our reference then was to such a department in a state. The National Labor Relations Board is a federal body, but the principle applies perhaps a fortiori.

Our function is to decide, not to advise. It would not be proper, therefore, to hazard our prediction of the ultimate constitutional fate of the "manufacturing plant" application of the Wagner Act. Whatever that fate, it is daily becoming clearer that the problem of conciliation and arbitration of industrial disputes is one of the most serious facing the country. We have used the words "conciliation and arbitration" suggestively, so to speak. They are the words of the Australian Constitution under which their act for the adjudication of industrial disputes is drawn. The Constitution of Australia, § 51 (xxxv); Legislative and Executive Powers in Australia, Wynes, chapter 7, p. 222 et sequitur; volume 35, Harvard Law Review, p. 225. We have already borrowed the ballot and minimum wage legislation from the Antipodes.

The bills will be dismissed.