## Schlesinger Petition.

*M. Y. Steinberg, W. S. Doty,* and *John T. Mc-Ternan* of the California Bar, for petitioner.

*Honorable Michael A. Musmanno,* in propria persona.

OPINION BY MR. CHIEF JUSTICE DREW, June 7, 1951:

This matter comes before us on a petition and supplemental petition for a writ of prohibition filed by Hymen Schlesinger, a member of the Bar of the County of Allegheny, and an answer of Honorable MICHAEL A. MUSMANNO, a judge of the Court of Common Pleas of that county.

A study of the record shows clearly the following facts: On May 24, 1951, when petitioner appeared as counsel for one McGrath, the plaintiff in a trespass case which had been assigned for trial to Judge MUSMANNO and a jury, the Judge directed that all parties and witnesses leave the court room, and then, in the presence of newspaper reporters and others, stated: "Before we proceed in this case, I want to interrogate, and my duties require that I interrogate, counsel for the plaintiff." The Judge then asked, inter alia, the following questions: "Hymen Schlesinger, have you ever been a member of the Communist Party"; "Are you a member of the Civil Rights Congress"; and "Did you or did you not form the Civil Rights Congress, which is a communist Front Organization, in your office—the Civil Rights Congress which is part of the movement to overthrow the Government of the United States by force and violence". Petitioner refused to answer these questions, insisting that Judge MUSMANNO was without jurisdiction to make such inquiry; and then made motions that the Judge disqualify himself

as to the trial of the McGrath case, and also for the entry of a voluntary non-suit. Judge MUSMANNO would not rule on the first of these motions, but did refuse the second. When petitioner sought to leave the court room, the Judge had the court officers restrain him until he, the Judge, had concluded his remarks. He then said: "We have formally adjudged you unfit to try a case in this Court as of today, morally unfit. You do not possess an allegiance to the United States. There is sufficient evidence before the Congress of the United States that you made statements that you believe in overthrowing the Government of the United States by force and violence. Because of these sworn statements, which you do not see fit to reply to, we declare you morally unfit to try a case in this court room. Therefore, the case will be continued until you purge yourself of contempt or until your client is able to obtain another lawyer."

On May 29, 1951, the petitioner filed this petition for a writ of prohibition, and we, on the same day, granted a rule on Judge MUSMANNO to show cause, returnable June 4, 1951, and stayed all proceedings until further order of this Court. Shortly before this Court granted the rule, Judge MUSMANNO filed an order in the Court of Common Pleas notifying petitioner to appear on May 31, 1951, in connection with the so-called contempt proceeding heretofore referred to. The deputy sheriff who attempted to serve petitioner on the street with a certified copy of the order of Judge MUSMANNO, notified the Judge that petitioner glanced at the outside of the copy of the order, declared "I am not accepting any service today", and threw the paper to the street and walked away. Judge MUSMANNO then issued a bench warrant for petitioner's arrest. About the time the petitioner was brought before the Judge on the afternoon of May 29, 1951, a copy of our order granting a rule to show cause and staying all proceed-

ings in the matter was served upon Judge MUSMANNO. Nevertheless, the Judge proceeded with a so-called hearing, and, although petitioner stated that he did not know that the man who attempted to serve him was a deputy sheriff, that he did not look at the paper and that he did not throw it away, Judge MUSMANNO again adjudged petitioner in contempt of court.

It is well settled, as was said by Judge KELLER, *In re Contempt of Myers & Brei*, 83 Pa. Superior Ct. 383, 387, 388: "Courts undoubtedly have the power to punish contempts and necessarily must have it to protect themselves from insult and enforce obedience to their process: Passmore Williamson's Case, . . . [26 Pa. 9], p. 18; and as a general rule,—as in cases where the contempt arises from some misconduct committed in the presence of the court, or refusal to obey its lawful process, order or decree—, the appellate court will not inquire further than to ascertain whether the record shows such misconduct or disobedience of the court's order, and its judgment on the facts is generally conclusive: Com. v. Newton, . . . [1 Grant 453]. But, as was well said in People v. Kelly, 24 N. Y. 74, 'this rule is, of course, subject to the qualification that the conduct charged as constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated of it; for if the act be plainly indifferent or meritorious, or *if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so.* The question whether the alleged offender really committed the act charged will be conclusively determined by the order or judgment of the court, and so with equivocal acts, which may be culpable or innocent according to the circumstances; *but where the act is necessarily innocent or justifiable it would be preposterous to hold it a cause of imprisonment.'* 'It certainly cannot be true that the decision of an inferior court adjudging

*a matter to be contempt precludes all investigation as to the legality of, or the proper authority of the court to make, such order.'* Ex parte Senior, 37 Fla. 1, 19 So. 652, 653. See also in re Briggs (N. C.) 47 S. E. 403, 405, 406. *The appellate courts must exercise supervisory power over subordinate courts for the purpose of seeing that they have not exceeded their jurisdiction and that the proceedings, as they appear of record, have been according to law:* Com. v. Newton, supra." (Italics added.)

The sole matter before Judge MUSMANNO was the trial of the trespass case then before him, and not a disbarment proceeding against petitioner, against whom no competent charge had been lodged or trial instituted. Under the facts and circumstances of this case, Judge MUSMANNO had no jurisdiction whatsoever to inquire as to whether or not petitioner, counsel for plaintiff in the case then before the court, was or was not a member of the Communist Party; he had no power to deprive petitioner of his right to practice his profession or to hold him in contempt when he refused to answer. What we said as recently as last year, in *Commonwealth of Pennsylvania, ex rel. Roth v. Musmanno,* 364 Pa. 359, 72 A. 2d 263, is equally appropriate in the instant case. In that case, Judge MUSMANNO, without any legal justification, dismissed Alice Roth from service as a grand juror because he concluded she was a Communist. There we said (p. 360) : "The procedure pursued by the judge cannot be supported. It constituted an arrogation and exercise of a power beyond the jurisdiction of any judge under existing law. The privilege of serving as a juror [or as here, of an attorney practicing his profession] is one of the valuable rights. . . . Such rights may neither be extinguished, abated nor dismissed by any proceeding short of one which fully comports with the historical and constitutional requisites of due process.

It is necessary, therefore, for the guidance of the judges of the Commonwealth in the future that the error above noted be, and the same is, hereby condemned."

Inasmuch as Judge MUSMANNO insisted upon questioning petitioner on matters which had no bearing whatsoever on the issue then before him, and even restrained petitioner when he sought to leave the court room, the Judge is not in a position to complain because of petitioner's remarks to him or the manner in which he made them, nor could the Judge properly hold petitioner in contempt for so doing. A judge's conduct should always be above reproach.[1] We said in *Sorrentino v. Graziano,* 341 Pa. 113, 119, 17 A. 2d 373, quoting from *Commonwealth v. Myma,* 278 Pa. 505, 508, 123 A. 486: " 'The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice.' "

Therefore, the order of Judge MUSMANNO of May 24, 1951, holding petitioner unfit to try the trespass case and also in contempt was null and void. Further-

---

[1] Canons of Judicial Ethics adopted by the American Bar Association, No. 34, provides: "In every particular his conduct should be above reproach. He should be conscientious, studious, thorough, courteous, patient, punctual, just, impartial, fearless of public clamor, regardless of public praise, and indifferent to private political or partisan influences; he should administer justice according to law, and deal with his appointments as a public trust; he should not allow other affairs or his private interests to interfere with the prompt and proper performance of his judicial duties, nor should he administer the office for the purpose of advancing his personal ambitions or increasing his popularity."

more, it is clear that petitioner was justified in refusing to accept service on the street of a copy of such order on May 29, 1951, inasmuch as the order was a mere nullity.

That this Court has power to issue a writ of prohibition under the circumstances here present cannot be questioned seriously: *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 61 A. 2d 426. "Such a writ is proper not only wherever a court acts outside of its jurisdiction but also when there is an abuse of jurisdiction. As stated in High, Extraordinary Legal Remedies (2d ed.) 604, 'The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in all proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice, that every tribunal vested with judicial functions should be confined strictly to the exercise of those powers with which it has been by law entrusted' "; *McNair's Petition,* 324 Pa. 48, 64, 187 A. 498. See also *Commonwealth v. Mellon Nat. Bk. & Tr. Co.,* 360 Pa. 103, 61 A. 2d 430.

It need hardly be stated that this Court is as opposed to communism in all its manifestations as the respondent Judge who instituted these contempt proceedings. But it is our sacred duty to uphold the Constitutions and laws of our Country and State and their provisions as to due process of law. What the Judge has done, in his zeal against communism, is to adopt the detestable method employed by communists themselves in arbitrary and unjudicial proceedings contrary to all our cherished traditions of law and legal procedure.

The orders of Judge MUSMANNO entered May 24 and 29, 1951, are vacated; the rule is made absolute, and a writ of prohibition is directed to issue restraining him from enforcing or in any manner whatsoever

carrying into effect his determination that petitioner is unfit to practice law or to try cases in the Court of Common Pleas of Allegheny County, and from taking any further action in the so-called contempt proceedings initiated by him against petitioner on May 24 and 29, 1951.

Mr. Justice LADNER took no part in the consideration or decision of this case.