## Milasinovich *v.* The Serbian Progressive Club, Inc., Appellant.

Argued September 28, 1951.   Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

reargument refused December 12, 1951.

*William S. Doty,* for appellants.

*Harry Alan Sherman,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 27, 1951:

This is an appeal from final decrees in equity granting an injunction against a corporation not for profit —first class—and its officers, and appointing a receiver and also giving other equitable relief.

The Serbian Progressive Club, Inc., is a corporation of the first class, incorporated by the Court of Common Pleas of Allegheny County under the Act of April 29, 1874 P. L. 73 and the Act of May 5, 1933 P. L. 289, as amended, 15 PS 2851-1 et seq. Its authorized purpose is to educate its members to become worthy citizens of the United States of America and to respect and obey the laws of the United States. The corporation owns real estate, has cash assets and is holder of a Pennsylvania Liquor Control Board liquor license. Five alleged members of the corporation filed a bill in equity charging that the present officers, or certain of them, were endeavoring to bring the corporation under the control of the Communist Party; that communist meetings were being held in the club house; that assets of the corporation were being employed for communist propaganda and the funds of the corporation being diverted from the lawful purposes of the corporation and applied toward subversive uses not only against the corporation but the United States; that because of these facts many members had resigned or abandoned their membership; that the corporation finances were becoming exhausted; that bodily harm was and is threatened to those members opposing communism; that the constitution and by-laws of the corporation were ignored; the names of alleged members of the communist party were given and it was charged that anti-communists are excluded.

The chancellor appointed a receiver to hold the assets of the corporation and, after extensive hearings, but with a record which leaves much to be desired, made findings of fact and conclusions of law, and entered a decree which the court in banc, with modifications, unanimously affirmed. The final decree of the court in banc reads:

"1. The defendants perverted the purposes of the charter granted by this court in using the club prem-

ises; (a) For communist and communist front meetings; (b) Diverting funds to communist and communist front organizations; (c) In the distribution of communist literature, booklets, and information.

"2. The defendant organization is ordered to expel at once the following officers and members charged with being communist and communist sympathizers: (here follow twenty-three names).

"3. To re-instate all former members who were anti-communist and who desire to rejoin said organization, and other members improperly expelled from said organization.

"4. The defendant organization and defendants are hereby permanently enjoined from using said club premises for communist meetings, discussions, conferences or for the sale or distribution of anti-American or any other treasonous literature of any character."

The chancellor took judicial notice that the communist party is a subversive organization which conspires to teach and advocate the overthrow of the government of the United States by force and violence and constitutes a clear and present danger of an attempt to so do: *United States ex rel. John Turner v. Williams,* 194 U. S. 279; *Kessler v. Strecker,* 307 U. S. 22; *Dennis et al. v. United States,* 341 U. S. 494; *United States ex rel. Georgian v. Uhl,* 271 Fed. 676, C.C.A. 2d; *Skeffington v. Katzeff et al.,* 277 Fed. 129, 132-133; *Antolish v. Paul et al.,* 283 Fed. 957, 959. An act of Congress, Smith Act, 54 Stat. 671, 18 U. S. C. (1946 ed.) sec. 11, makes it a crime to knowingly or wilfully advocate the overthrow or destruction of the Government of the United States by force or violence, or to conspire to do so: *Dennis et al. v. United States,* 341 U. S. 494.

The findings of the chancellor are sufficiently supported by the testimony of various witnesses, including a witness who was a former undercover agent em-

ployed by the Federal Bureau of Investigation. He testified that several named present officers and members of the corporation were members of and affiliated with the communist party and were actively engaged in the work and purposes of that organization.

It was testified that the purposes of the corporate charter were being perverted. Communistic doctrines were being substituted for those of the corporation. There clearly existed a danger that instead of educating its members to become worthy citizens of the United States of America and to respect and obey the laws of the United States, the corporation was now teaching and advocating the overthrow of the government of the United States by force and violence. The assets of the corporation were being diverted and used for communist propaganda. The real and personal property of the corporation was in jeopardy. The chancellor in such circumstances correctly issued the injunction and by a supplemental decree appointed a receiver.

It is true that a court in equity has no jurisdiction, in the absence of a statute, merely to declare an election void or to remove or enjoin officers. But it possesses such jurisdiction if some other ground of equitable jurisdiction is presented: *Jenkins et al. v. Baxter et al.*, 160 Pa. 199, 28 A. 682; *Bedford Springs Co. v. McMeen et al.*, 161 Pa. 639, 29 A. 99; *Deal v. Miller*, 245 Pa. 1, 90 A. 1070. For an ordinary corporate election contest there exists an adequate remedy at law, viz.: *quo warranto* or *mandamus*. In the case now before us the injunction and the appointment of a receiver was necessary and appropriate upon the allegations and proof of fraud, waste and misapplication of assets. In *Jenkins et al. v. Baxter et al.*, supra, p. 201, it is recited that there was no allegation of fraud or force. In *Deal v. Miller*, supra, p. 3, we said: "There is no averment that the defendants are seeking to get

possession of the property of the corporation with a view to its mismanagement or to waste it or in any way to control it to the prejudice of the stockholders of the company." See also sec. 367 et seq. Fletcher Cyclopedia Corporations, p. 132 and the numerous cases therein cited.

In addition to a court's general equity jurisdiction, a partial statutory remedy has been provided by the Legislature. Sec. 503 (c) of the Act of May 5, 1933 P. L. 289, art. V, 15 PS 2851-503, provides: "Unless the articles or by-laws otherwise provide, the court of common pleas of the county where the registered office of the corporation is located may, at the suit of five or more members, remove from office any director or directors in case of fraudulent or dishonest acts, or gross abuse of authority or discretion, with reference to the corporation, and may bar from reelection any director so removed for a period prescribed by the court. The corporation shall be made a party to such actions."

Appellants contend that one of the five named plaintiffs in the bill is not a member, having been expelled, and that he took no appeal as provided by the by-law. Since there is a dispute concerning who are and who are not lawful members and officers we will presently refrain from passing upon the status of this plaintiff. The present equity decree is a cautionary one, designed to keep the corporate assets intact until the controverted matters have been finally adjudicated.

As above stated, while ordinarily equity does not possess jurisdiction to pass upon the validity of membership and of elections in corporations, it does possess jurisdiction to issue injunctions and appoint receivers in connection with corporations. It is a doctrine well supported by authority that where equity has properly taken jurisdiction for one purpose it will retain it for *all purposes* in order to do complete justice. In *Mower v. Mower,* 367 Pa. 325, 80 A. 2d 856, we

said, p. 328: "It is true that an action to quiet title would afford plaintiff relief against the bank and compel it to record the deed. But plaintiff also seeks relief against her husband to prevent him from selling or encumbering the property. A court of chancery, having jurisdiction for one purpose, will retain it for all purposes and do complete justice as between the parties even though it adjudicates questions which in the first instance would not have warranted the court in assuming jurisdiction: Johnston et al. v. Price et al., 172 Pa. 427, 33 A. 688; Bowman v. Gum, Inc., et al., 327 Pa. 403, 193 A. 271."

We therefore affirm the grant of the injunction and the supplemental appointment of a receiver *pendente lite* on December 29, 1950. We do not, however, affirm that portion of the decree which orders "The defendant organization . . . to expel at once the following officers and members charged with being communist and communist sympathizers (naming twenty-three individuals)." Nor do we affirm that portion of the decree reading: "To re-instate all former members who were anti-communist and who desire to rejoin said organization, and other members improperly expelled from said organization."

In this most unsatisfactory record, it is obvious that of the twenty-three members who are directed by the chancellor to be expelled from membership, only seven of them have been named as defendants. Sixteen have never been made parties nor afforded an opportunity to be heard in their defense. Furthermore, the order to admit "former members who were anti-communist" and all "other members improperly expelled" is entirely too vague and indefinite for legal enforcement.

What Chief Justice DREW said in *Schlesinger Petition,* 367 Pa. 476, 81 A. 2d 316, has peculiar application herein, p. 483: "It need hardly be stated that this Court is as opposed to communism in all its manifesta-

tions as the respondent Judge who instituted these contempt proceedings. But it is our sacred duty to uphold the Constitutions and laws of our Country and State and their provisions as to due process of law. What the Judge has done, in his zeal against communism, is to adopt the detestable method employed by communists themselves in arbitrary and unjudicial proceedings contrary to all our cherished traditions of law and legal procedure."

It is not in accordance with settled American legal principles to decree the status, rights, privileges and duties of any individual merely by way of *accusation* or *hearsay evidence.* Every accused person whom the plaintiffs seek to remove must be made party to these proceedings and freely be given the opportunity of being heard and to defend himself. Likewise, any individuals who claim to be entitled to reinstatement as members must apply for such reinstatement, with notice to all persons affected thereby, and a full hearing had, if required: *Commonwealth ex rel. Roth v. Musmanno,* 364 Pa. 359, 72 A. 2d 263; *Schlesinger Petition,* supra.

We therefore remit the record to the court below with direction to determine (after joinder and ample notice to all persons concerned) who are in fact communists, and where so found to be, to expel them from membership; to re-instate as members all former members who may have been improperly expelled from membership and who desire readmission; that when and as soon as the legal membership is judicially determined, to order and supervise an election, at which officers may be duly and properly elected. For the above purposes the court may appoint a master, or hear the case, as it may elect.

The decree, as above modified, is affirmed. Costs to abide the event.

OPINION BY MR. JUSTICE JONES, CONCURRING IN PART:

I concur in the affirmance of the decree to the extent of the appointment of a receiver for the preservation of the status quo pending final determination of the questions of waste and mismanagement of corporate assets alleged by the complaint. I do not agree, however, that the allegation that the defendant officers and members of the respondent corporation are members of the Communist Party is either relevant or material to the equitable issues involved. Even if true, such a fact would present no cause cognizable in equity. The familiar maxim that the remedy in equity is a complete one cannot operate to draw within the jurisdictional bounds of a court of equity matter which is by law expressly and exclusively committed to another forum. Thus, equity does not sit to adjudicate, restrain or punish crimes. Inasmuch as membership in the Communist Party has now become a crime in this Country, the proper place for the determination of one's guilt of such a charge is in a criminal court after a fair hearing in keeping with the requirements of historical due process. Insofar as the corporate purposes of the defendant society are transgressed or violated by its furtherance, teaching or propagation of Communist doctrine, the appropriate remedy is by quo warranto at law. I think it is important that these time-honored distinctions not only be recognized but that they be faithfully observed by the courts, especially in this day when there is prevalent an all-too-general tendency to find guilt by association or from accusatory appellation rather than by due conviction upon proof after formal charges and a fair trial.