## Akron Borough *v.* Pennsylvania Public Utility Commission, Appellant.

Argued November 21, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy and Nix, JJ.

*Philip P. Kalodner,* with him *Edward Munce, Anthony L. Marino* and *Alan R. Squires,* for Pennsylvania Public Utility Commission, appellant.

*Eugene J. Brew, Jr.,* and *Dale and Brew,* for Harborcreek Township, amicus curiae.

*W. Russel Hoerner,* with him *Kenelm L. Shirk, Jr., Shearer, Mette, Hoerner & Woodside,* and *Shirk & Reist,* for Borough of Akron, appellee.

OPINION BY MR. JUSTICE POMEROY, September 19, 1973:

The Pennsylvania Public Utility Commission [hereinafter the "P.U.C." or "the Commission"] here appeals a decision of the Commonwealth Court entered August 5, 1971[1] in which that court held that the P.U.C. was without power (upon the complaint of a third person) to order a municipality which supplies water services to its citizens and to customers within a certificated extraterritorial area to extend its services to customers located beyond such certificated area.

The background of this litigation is protracted and requires some explanation. In January of 1958 the appellee Borough of Akron filed an application with the Commission in which it sought a certificate of public convenience authorizing it to furnish water service to the public within a designated portion of West Earl Township, Lancaster County, an area adjacent to but outside of the corporate limits of Akron. The Commis-

---

[1] *Akron v. Pennsylvania Public Utility Commission,* 2 Pa. Commonwealth Ct. 625 (1971). Judge KRAMER wrote for the court, and Judge MANDERINO, now a member of this Court, filed a dissenting opinion.

sion granted that certificate. On May 4, 1967, one Mahlon Zimmerman, the owner of a tract of land adjacent to the Akron-served area in West Earl Township, filed a complaint with the Commission in which he charged, in sum, that the Borough of Akron had unlawfully refused to extend water service to his land. The Borough filed with the Commission a preliminary objection, questioning the power of the Commission to order an extension of service beyond that area served under the certificate of authority issued in 1958. The Commission denied the motion and entered an order setting August 30, 1967, as a hearing date.

The Borough, nine days before that scheduled hearing date, filed an action in equity in the Court of Common Pleas of Dauphin County, Commonwealth Docket, in which it sought to enjoin the Commission from proceeding to hold the scheduled hearing. A preliminary objection to the jurisdiction of the Dauphin County Court filed by the Commission was denied, and that interlocutory order was affirmed by this Court on an appeal taken by the Commission. *Akron Borough v. Pennsylvania Public Utility Commission,* 441 Pa. 9, 270 A. 2d 393 (1970).[2] Shortly after our decision on that appeal, the matter was transferred from the Court of Common Pleas to the docket of the newly-created Commonwealth Court (Dec. 4, 1970). The plaintiff-Borough sought and obtained a preliminary injunction (Jan. 8, 1971) and the Commonwealth Court granted the plaintiff's motion for judgment on the pleadings (Aug. 5, 1971), thus making the preliminary injunction final.[3] For the reasons given hereafter, we will vacate

---

[2] Mr. Justice COHEN wrote the opinion of the Court and the former Chief Justice BELL and Mr. Justice ROBERTS published dissents.

[3] The Commission's complainant, Mahlon Zimmerman, intervened as a defendant in the Borough's equity action in the Dauphin County Court and was represented by counsel in this Court on the

the decree of the Commonwealth Court and remand with direction to dismiss the Borough's complaint in equity.

## I.

We begin by noting that the earlier decision by this Court, supra, dealt only with the question of whether the Dauphin County Court (now the Commonwealth Court) had *power* to entertain an action brought by the Borough of Akron in which the Borough sought to prevent the very occurrence of an administrative proceeding. Finding the existence of such power in a section of the Public Utility Law,[4] we held, consistent with an earlier decision in *York Railways Company v.*

---

Commission's earlier appeal. On remand and after transfer to the Commonwealth Court, however, intervenor Zimmerman failed to file a responsive answer to the complaint and a default judgment was entered against him. Presumably Mr. Zimmerman is still awaiting the eventuality of proceedings before the Commission on his complaint filed in May, 1967.

[4] At the time of filing of the Borough's complaint, Section 1111 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, Art. XI, 66 P.S. §1441, read as follows: "No injunction shall issue modifying, suspending, staying, or annuling any order of the commission, or of a commissioner, except in a proceeding questioning the jurisdiction of the commission, and then only after cause shown upon a hearing. The court of common pleas of Dauphin County is hereby clothed with exclusive jurisdiction throughout the Commonwealth, of all proceedings for such injunctions, subject to an appeal to the Superior Court as aforesaid." Section 508(a)(55) of the Appellate Court Jurisdiction Act of 1970, July 31, 1970, P. L. 673, 17 P.S. §211.508(a)(55) (Supp. 1973-74), transferred the jurisdiction of the Dauphin County Court, as named in the above section of the Public Utility Law, to the Commonwealth Court.

An amendment to the Public Utility Law, June 3, 1971, P. L. 118, No. 6, §1, 66 P.S. §1441 (Supp. 1973-74), changed Section 1111 so as to read as follows: "No injunction shall issue modifying, suspending, staying, or annuling any order of the commission, or of a commissioner, except in a proceeding questioning the jurisdiction of the commission, and then only after cause shown upon a hearing."

*Driscoll*, 331 Pa. 193, 200 A. 864 (1938), that "equity has jurisdiction over the cause of action raised by the Borough's complaint. . . ." 441 Pa. at 16. We did not by our earlier decision intimate a view on the merits, nor did we deal with the propriety of granting either a final or a preliminary injunction: "[A]t this stage of the proceedings we are not deciding the merits of this controversy; we are not deciding *whether a final decree prohibiting the Commission from proceeding would be affirmed.*" 441 Pa. at 13 (emphasis added). It is open to us today, therefore, without infringement on the doctrines of res judicata or "law of the case", to examine, not the question of whether the court below had *power to entertain* the Borough's action, but the question of whether, under the circumstances of the case, that admitted jurisdiction *should have been exercised.*[5] We have concluded that the Commonwealth Court erred in approaching the question on remand as solely that of jurisdiction *vel non* in the Commission to hold a hearing on Mahlon Zimmerman's complaint and, in so doing, bypassed a most important principle of judicial-administrative relationships.

---

[5] The difference between the question earlier presented by the Commission's appeal (jurisdiction, or power to entertain the action) and that presented today is well expressed in the dissenting opinion of Mr. Justice MANDERINO, then a Judge of the Commonwealth Court: "Akron, of course, had every right to file a complaint before this court as an equity court *asking* for an injunction. As pointed out by the majority opinion, this court has subject matter jurisdiction over such a complaint under the Public Utility Law. . . . While that section does give this court subject matter jurisdiction, it *does not* say anything about changing the time-honored rules for granting an injunction. It does not give this court statutory authority to grant injunctions without the normal prerequisites which a court of equity demands before stopping a legal proceeding already in progress." (Emphasis in original.) 2 Pa. Commonwealth Ct. at 638.

## II.

We deal on this appeal not with the subject of judicial *review* of administrative action but rather with the subject of judicial *prevention* of the very occurrence of such action. This latter object was achieved at common law by issuance of the extraordinary prerogative *writ of prohibition* from the high courts of Westminster (King's Bench, Exchequer, and Common Pleas). This Court, which by statute possesses all the powers of the Court of King's Bench,[6] has carefully delineated the difference between the *power* to grant the writ and the *propriety* of granting the writ. In *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 101-2, 61 A. 2d 426 (1948), we said: "This brings us, then, to the question whether, under the circumstances of the present case, a writ of prohibition should issue. We are clearly of opinion that it should not. . . . The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction, or otherwise." Applying that standard in *Carpentertown,* we refused to interfere with a proceeding before the State Mining Commission in which a disputed jurisdiction was asserted over the Turnpike Commission, observing that the statutory provision of an appeal from final orders of the Commission, an appeal in which jurisdictional as well as other errors

---

[6] Act of May 22, 1722, 1 Sim. P. L. 131.

might be corrected, made it unnecessary to invoke the extraordinary remedy of prohibition.[7] It is true, however, that prohibition can be utilized to prevent the assertion by an inferior tribunal of a *clearly* erroneous claim of jurisdiction. See, e.g., *Schlesinger Petition,* 367 Pa. 476, 81 A. 2d 316 (1951); *Communist Party Petition,* 365 Pa. 549, 75 A. 2d 583 (1950); *Park's Petition,* 329 Pa. 60, 196 A. 2d 495 (1938); *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936). As one text expressed the thought:

"The purpose of prohibition is to shut off the necessity of going through a hearing, a trial, before a tribunal that has no power to deal with the subject matter at all. Prohibition is not appropriately used to forestall a merely erroneous exercise of jurisdiction. On the other hand, it exactly fills the bill if the tribunal can in no circumstances whatsoever act validly as to the subject matter involved in the hearings it proposes to conduct.

"The point can be made clear by an admittedly extreme example. It is as though a justice of the peace, empowered to hear only petty cases such as those involving traffic law violations, were to summon parties before him in order to decide whether a divorce decree should be granted. In such an instance the defendant would not have to suffer as patiently as possible through a hearing before a powerless tribunal and then seek to set aside its empty judgment; instead, he could stop the nonsense at the outset by obtaining a writ of prohibition." Gellhorn & Byse, Administrative Law 138 (1970).

---

[7] Accord, L. Jaffe, Judicial Control of Administrative Action 192-93 (1965) ("[Prohibition] is ordinarily denied if review at a later stage would be adequate"); K. C. Davis, 3 Administrative Law Treatise §24.04, at 419 (1958) ("Prohibition is customarily denied when another remedy, statutory or non-statutory, is deemed adequate").

Under the Public Utility Law, as amended by the Act of June 3, 1971, P. L. 118, No. 6, §1, 66 P.S. §1431 (Supp. 1973-74), there exists an adequate remedy in the form of an appeal from any final order the Commission might make after a hearing held on Zimmerman's complaint.[8] We do not think that the trouble and expense caused to appellee Akron in participating in a Commission proceeding leading to a final and appealable order makes the remedy of appeal less than adequate. That expense is "part of the social burden of living under government," *Bradley Lumber Co. v. National Labor Relations Board*, 84 F. 2d 97, 100 (5th Cir. 1936), and is an "inadequate basis for intervention whether by mandamus or injunction". *Whitehouse*

---

[8] The Commission argues that on an appeal taken under 66 P.S. §1431, the Borough will be at liberty to press any jurisdictional arguments properly preserved in a hearing before the Commission. We agree. In doing so, however, we must disapprove of two decisions of the Superior Court in which it was held that the injunctive proceeding set forth in 66 P.S. §1441 was mandatory and exclusive, and that questions of jurisdiction could not be argued on a Section 1431 appeal. See *Blythe Township Municipal Authority v. Pennsylvania Public Utility Commission*, 191 Pa. Superior Ct. 542, 159 A. 2d 256 (1960) ; *Sayre Land Co. v. Pennsylvania Public Utility Commission*, 167 Pa. Superior Ct. 1, 74 A. 2d 713 (1950). We find the reasoning of these cases unpersuasive.

We further note that the latter case, *Sayre*, purported to proceed by analogy from the Act of March 5, 1925, P. L. 23, §1, 12 P.S. §672, in which litigants at law or equity are permitted to take interlocutory appeals from pretrial determinations on the existence of subject matter jurisdiction. We have consistently held that 12 P.S. §672 is *permissive* only and that failure to take an interlocutory appeal on the question of jurisdiction *does not* prevent that question from being determined on appeal from a final order. See, e.g., *Home Life Ins. Co. of America v. Board of Adjustment*, 393 Pa. 447, 143 A. 2d 21 (1958) ; *Conerty v. Butler County Oil Refining Co.*, 301 Pa. 201, 151 A. 816 (1930) ("The statute [of 1925] is an enabling and not a disabling one, and takes away no rights which existed before its passage").

*v. Illinois Central Railroad Co.*, 349 U.S. 366, 374, 99 L. Ed. 1155 (1955) (FRANKFURTER, J.).

The question of power in the Commission to order an unwilling municipality to provide water service beyond its certificated extraterritorial service area is of first impression and is difficult; certainly this assertion of power by the Commission cannot be labeled clearly erroneous.[9]

There is no doubt, therefore, that had the appellee Borough attempted to prevent the Commission from proceeding by petitioning this Court for a writ of prohibition, we would deny the writ on the strength of cases such as *Carpentertown*, supra. The question, therefore, becomes one of determining whether there is any reason to say that the Commonwealth Court, acting under 66 P.S. §1441, should do otherwise.

## III.

It is clear that the courts of common pleas of this Commonwealth as a general proposition lack the power to prohibit inferior tribunals from proceeding. See, e.g., *Carbon County v. Leibensperger*, 439 Pa. 138, 266 A. 2d 632 (1970); *Pa. Labor Relations Board v. Butz*, 411 Pa. 360, 192 A. 2d 707 (1963). At the time of enactment of the Public Utility Law of 1937, it was therefore necessary *specifically* to empower the Dauph-

---

[9] The appellee argues that a proceeding under 66 P.S. §1441 would be proper "if the Commission were to attempt to assert jurisdiction over a case involving the transfer of a liquor license to a location next door to the office of a public utility." If the Commission were to launch itself into the business of regulating liquor licenses, doubtless we would characterize that assertion of jurisdiction as clearly erroneous.

That is not this case. Indeed, absent the single fact that appellee is a Borough and not a private corporation, the power of the Commission after hearing to order extensions of service would be unquestioned.

in County Court to enjoin the Commission "in a proceeding questioning the jurisdiction of the commission", but only "after cause shown" and "upon a hearing".[10] While it is true that this statutory provision speaks of an "injunction" and not of the common law power of prohibition, we think that the semantical difference is without significance. That *prohibition* is historically a legal and not an equitable remedy is a fact not well understood.[11] Consequently, this Court in the past has been astute to recognize that petitions praying for "injunctions" may in fact be imperfectly framed requests for writs of prohibition. For example, in *Carbon County v. Leidensperger*, 439 Pa. 138, 140, 266 A. 2d 632 (1970), we remarked:[12] "Although this suit was brought in equity and sought an injunction to restrain appellant [a magistrate] from proceeding with the suit for costs, in actuality it was a request for a writ of prohibition. The writ of prohibition is the facility by which this Court exercises superintendence over inferior courts and keeps inferior courts within the limits of their rightful powers and jurisdiction. . . ." We therefore think that when the General Assembly spoke in 66 P.S. §1441 of an "injunction" to be issued only "after cause shown", it did not intend to create any different test for determining in what circumstances a

---

[10] See note 4 supra.

[11] We do not mean to say that the Courts of Chancery did not grant writs of prohibition. As Justice STERN pointed out in *Carpentertown Coal & Coke Co.*, supra, 360 Pa. at 98, Chancery subsequently came to use the writ as well.

[12] See also *Pa. Labor Relations Board v. Butz*, 411 Pa. 360, 192 A. 2d 707 (1963), a case in which we primarily held that the court of common pleas was without power to grant a writ of prohibition. Realizing that the same result—prohibition—might be obtained through exercise of *equitable* powers, we further held: "Our research fails to disclose any authority for the issuance of the writ of prohibition under the chancery powers of common pleas courts." 411 Pa. at 364.

superior court (here the Commonwealth Court) would be justified in prohibiting proceedings in an inferior tribunal.[13] It follows, for reasons set forth in part II, supra, that the Commonwealth Court erred in approaching the question of jurisdiction without reference to other considerations (i.e., adequacy of remedy on appeal and clarity of error in the Commission's assertion of jurisdiction).

Although Mahlon Zimmerman filed his complaint with the Commission in 1967, as of this date there has been no determination of what would be required in furnishing his tract with the Borough of Akron's water. We do not know the relevant facts; for example, how far his land lies from existing conduits and reservoirs; whether additional pumping stations would be required; whether additional storage facilities would be constructed; what portion of these costs would be borne by Zimmerman. The Borough both below and in this Court argues that it would be an unconstitutional taking of property without due process of law for the Commission to possess the jurisdiction here asserted. The line between constitutional regulation and unconstitutional taking is almost never discernible in the absence of a concrete factual situation. That this case should reach the highest appellate court of this State six years after its commencement without resolution of such factual issues is itself strong argument against ignoring the traditional and discretionary limitations on the use of a remedy in the nature of prohibition. We hold that in view of the adequacy of the Borough's remedy by appeal during which the question of jurisdic-

---

[13] The statute, 66 P.S. §1441, speaks of enjoining orders of an administrative agency, the Public Utility Commission. We note that the writ of prohibition similarly reached the actions of administrative agencies. See, e.g., *Carpentertown Coal & Coke Co. v. Laird*, supra; *First Congressional District Election*, 295 Pa. 1, 144 A. 735 (1928).

tion in the Commission can be raised and in view of the closeness of the question of the Commission's power to order an extension of the Borough's extraterritorial service area, the Commission should have been permitted to proceed to a hearing on the Zimmerman complaint.

The decree of the Commonwealth Court is reversed and the matter is remanded with direction to dismiss appellee's complaint in equity.

It is so ordered. Costs to be equally divided by the parties.

Mr. Justice EAGEN dissents.

Mr. Justice MANDERINO took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

I would affirm the order of the Commonwealth Court. I believe the question of jurisdiction should be decided at this stage.