578 A.2d 994

**PENN CAMBRIA SCHOOL DISTRICT**

**v.**

**PENN CAMBRIA EDUCATION ASSOCIATION.**

**Appeal of Jeffrey SPROUSE, James R. Itle and Alex E. Echard.**

Commonwealth Court of Pennsylvania.

Argued June 15, 1990.

Decided July 19, 1990.

Alex E. Echard, Mount Pleasant, for appellant.

No appearance for appellee.

Before CRAIG, President Judge, SMITH, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Jeffrey Sprouse, James R. Itle and Alex E. Echard (Appellants) appeal from orders of the Court of Common Pleas of Cambria County (Court) finding in contempt members of the Penn Cambria School District (District/Board), their attorney, and members of the negotiating committee. We reverse.

The issues before us are (1) whether we should reverse the court's orders of contempt because it failed to file an opinion in support of its orders; (2) whether the court failed to comply with the mandatory procedural steps and requirements for civil and indirect criminal contempt proceedings; and (3) whether the court improperly commingled civil and indirect criminal contempt proceedings. The trial court failed to file an opinion in support of its order pursuant to Pa.R.A.P. 1925. In lieu of the record on appeal, pursuant to an order of this Court, the parties, in accordance with Pa.R.A.P. 1924, filed an agreed statement of the record.

The issues in this case are a culmination of a series of orders and events growing out of a labor-related dispute in 1985 between the District and the Penn Cambria Education Association (Association). The complaint giving rise to the orders herein was initially filed by students of the District

on March 7, 1985, against the Association and the District. As a result thereof, the Court entered a preliminary injunction on March 12, 1985, directing the end of the teachers' strike and that the District commence classes on March 13, 1985. Pursuant to a petition filed by the Association, the court found nine board members and their attorney in contempt of its orders.[1]

During the strike and thereafter, the court issued a substantial number of orders. In the first, dated March 12, 1985, the trial judge ordered (1) the District to conduct classes on March 13, 1985, (2) the teachers and others to resume their duties on that date, (3) the parties to conduct daily negotiations until a contract is reached or until a further court order, (4) that no regularly scheduled week days or class periods be used for negotiations, in-service days or other such functions and (5) that the teachers, Board and administrators give careful consideration to scheduling classes on Saturdays.

The court entered an order on March 19, 1985, amending the March 12, 1985 order, relating to several paragraphs including the requirement that the parties continue negotiations on a number of specific dates and hours. Again, on April 2, 1985, the court issued an order amending its March 12, 1985 order, addressed to the scheduling and the details of how and who are to continue the negotiations and cautioned that "it is explicitly inherent in the court's directive that each side engage in meaningful, good faith negotiations and each side is cautioned that its individual interpretations and misconstruing of the court's order will be considered an act of contempt." Trial court's April 2, 1985 order at 4.

In the Court's order of April 12, 1985, the court stated:

Compensation and all fringe benefits contained in the 33–page collective bargaining agreement shall be provid-

---

1. From the Cambria County Prothonotary's docket sheets, it appears that the additional persons, some of whom the trial judge released from contempt, are Alfred Smith, John Yahner, Adam P. Lee, Ralph Sheehan, James Rittner, Roger Brubaker, Thomas M. Kissell, Leo E. O'Leary and Bruce J. Bradley.

ed to the teachers and shall be paid by the school district with the following exceptions:

(a) The provision of said agreement which requires 180 teaching days is necessarily modified by operation of law *since 180 days of professional service cannot be rendered prior to June 30, 1985.* (Emphasis added.)

On April 15, 1985, the court ordered that all of its orders are amended to provide that the court imposed negotiations are suspended.

The trial judge in his order dated May 31, 1985, discussed the individual Board members' legal obligation to carry through the legislative provisions of the school code and the Supreme Court's interpretation, including the following quote from this Court: "Strike activity or other unavoidable delay or disruption of a desired adopted schedule renders compliance under the Code unavailable only when that disruption is so extensive as to preclude the possibility of 180 days of pupil instruction *within the statutory school year." Scanlon v. Mount Union Area Board of School Directors,* 51 Pa.Commonwealth Ct. 83, 90, 415 A.2d 96, 99 (1980), *aff'd,* 499 Pa. 215, 452 A.2d 1016 (1982) (emphasis in original). Trial court's May 31, 1985 order at 2. The trial court further held that "each Board member shall answer to the court on June 7, 1985 at 1:30 p.m. why he has not complied with the legislative provisions of the School Code and the Pennsylvania Supreme Court's interpretation of the same." *Id.*

Before the trial judge could take the Board members to task, our Supreme Court, in a June 5, 1985 order, stayed the June 7, 1985 proceedings in the trial court, pending its consideration of the case filed by the District against the trial court, Judge O'Kicki, the Pennsylvania Labor Relations Board, the Pennsylvania Bureau of Mediation and the Pennsylvania Department of Education. On June 24, 1985, that court denied the District's requested relief, which was to have the Supreme Court assume jurisdiction, and ordered Judge Joseph O'Kicki's name stricken from the caption.

The Supreme Court's action led to the trial judge on July 23, 1985, based on June 28 and July 23, 1985 hearings, finding members of the Board, and their attorney, in contempt of his orders and imposing a series of fines and jail sentences against them. A typical and representative sentencing order dictated by the court from the bench is as follows:

*Proceedings*

THE COURT: Mr. Sprouse.

(Whereupon, Jeffrey M. Sprouse came forth)

THE COURT: As secretary of the Board and as chairman of the negotiating committee, you had a much higher responsibility in these entire proceedings.

You were the leader. You, sir, have not purged yourself of contempt. You have violated Article III of the Pennsylvania Constitution; you have violated Section 1501 of the Public School Code; you have violated the directive of the Department of Education of the State of Pennsylvania dated May 3, 1985; you have disregarded and violated the Supreme Court opinion of *Scanlon vs. Mount Union Area School District.* You have deliberately, willfully, and blatantly violated the trial court orders of March 12, April 2, April 12, and May 31 of 1985.

You have taken no appeal from these orders. Therefore, it is the sanction of this Court, Mr. Sprouse, that you pay a fine individually of $500.00, and that you serve not less than 30 nor more than 150 days in the Cambria County Jail.

You may pass through that door.

(Whereupon, sentencing was concluded)

ORDER

AND NOW, this 23rd day of July, 1985, the foregoing record of the sentencing in the above-captioned matter is adopted as the Findings of Fact and the sentencing order

imposing said sentence on the above-named defendant for the contempt violation.

(Signed)
Joseph F. O'Kicki

Contempt hearing—sentencing for Jeffrey Sprouse at 2.

The fines and sentences of the other school board members were as follows: Adam Lee and Alfred Smith were fined $500 with jail sentences of not less than 10 nor more than 100 days; Ralph Sheehan and James Itle were fined $250 and a jail sentence of not less than 5 nor more than 50 days; Leo O'Leary, Bruce Bradley, and James Rittner were fined $500 and a jail sentence of not less than 15 nor more than 100 days. After imposing the sentences, the Court, in its order of July 23, 1985, denied the oral motion to release the school board members from the county jail. However, in a handwritten order later that day, the court stayed the contempt citations and ordered their release from the Cambria County jail with the terms and fines stayed pending further order of the court.

Thereafter, approximately two years later, on May 29, 1987, the court issued a series of separate orders involving board members O'Leary, Bradley, Rittner, Sheehan, Lee, and Smith, who "having withdrawn his appeal from a finding of civil contempt" to the Superior Court/Commonwealth Courts and having reconsidered the courts orders of July 23, 1985, the finding of civil contempt together with the fines and jail terms were vacated. Further, the orders were to become effective upon the payment by each of them of ⅛ of the cost of the filing of the petition for civil contempt, hearings of June 28 and July 23, 1985, and the payment of the sum of $100 for the use of the Cambria County free law library. It is not clear from the record before us why the court released some but not all of those charged with contempt.

## DISCUSSION

Since we base our decision on procedural principles, we will not address or consider the issue of the court's failure

to comply with Pa.R.A.P. 1925. The board members and attorney who were found in contempt and filed appeals with this Court contend generally that the trial court failed to afford them the proper procedural safeguards before holding them in contempt of the court. We agree.

Here we are faced with the contempt citations based on the court's finding of alleged violations of the Pennsylvania Constitution, statutes, Supreme Court decisions and the trial court's orders of March 12, April 2, April 12 and May 31, 1985. "A conviction of contempt for violation of a court order can be sustained only if the order or decree was definite, clear, specific and left no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited." *Commonwealth v. Garrison*, 478 Pa. 356, 368–69, 386 A.2d 971, 977 (1979). *See also In re Johnson*, 467 Pa. 552, 359 A.2d 739 (1976); *Dunn v. Rulli*, 109 Pa.Commonwealth Ct. 355, 531 A.2d 103 (1987). Here, even when considering the orders referred to by the trial court, the contempt orders were not specific enough to put Appellants on notice as to what actions they were obligated to take. We have nothing in this record of any findings of how the board members and attorney violated the court's four orders, statutes, constitution and Supreme Court decisions. Further, the court failed to designate the statutory and constitutional basis for its contempt citations and its four orders referred to in its sentencing orders. Therefore, the contempt orders remained indefinite, imprecise and unspecific.

We agree that the court improperly commingled civil and indirect criminal contempt proceedings. For example, the court stated at page 13 of the transcript, "this [is] in the nature of indirect criminal proceedings." (N.T. 13.) Also at page 17 of the transcript, the court noted that since the school year had ended (June 30, 1985) it would be impossible and difficult for the parties to purge themselves and then stated, "we find that a civil remedy is not appropriate in this case." (N.T. 170.) Then also, in the court's order of May 29, 1987, it referred to the court's finding of civil

contempt against the board members when vacating the contempt citation against six board members. Notwithstanding, the court then requested at the July 1985 sentencing hearing that the board members and counsel come forward after a brief recess for sentencing of how "they intended to purge themselves of contempt." (N.T. 170.)

First, we must inquire whether the contempt was of a civil or criminal nature. Contempt does not automatically become categorized as criminal upon a trial court's so holding, *Schlesinger v. Musmanno*, 367 Pa. 476, 81 A.2d 316 (1951). Although the trial court, as late as May 29, 1987, approximately two years after the contempt citations, in his order characterized the citations as civil contempt, we are not bound by this characterization. It is clear from the circumstances surrounding the entry of the court's order that it was an order of criminal contempt. We hold, therefore, that the board members' and attorney's conduct would have constituted indirect criminal contempt. Although the trial court attached little significance to the distinction between criminal and civil contempts, they may not be casually commingled. The choice of labels is extremely important, since criminal contempt would be a crime and the trial court thus would have to provide appropriate procedural safeguards.

The court, in determining whether the contempt may be civil or criminal, must look to the dominant purpose of the contempt proceedings. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding in criminal contempt. *Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956); *Bruzzi v. Bruzzi*, 332 Pa.Superior Ct. 346, 481 A.2d 648 (1984). Where the act of contempt complained of is a refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with a decree of court are civil in nature. Accordingly, a civil label is inappropriate when the court is attempting to punish a person for past acts of misbehavior rather than setting forth the conditions

of compliance to which the person was required to conform and conditioning punishment on failure to comply forthwith. *Philadelphia Marine Trade Association, et al. v. International Longshoremen's Association Local Union No. 1291, et al.*, 392 Pa. 500, 140 A.2d 814 (1958). As the court noted at the sentencing hearing on July 23, 1985, no conditions were attached which would have allowed the Appellants to purge themselves of contempt by compliance with the court's order. Thus, the Appellants were powerless to escape by compliance. The contempt was criminal in nature. In this case, the Appellants did not have the proverbial "key to the jailhouse door." *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977).

Since we conclude that the Appellants were cited for indirect criminal contempt, they are entitled to the essential procedural safeguards that attend any criminal proceedings in general. *Cipolla v. Cipolla*, 264 Pa.Superior Ct. 53, 59–60, 398 A.2d 1053, 1056 (1979). Some of the safeguards which the trial court failed to afford the Appellants include a right to bail, notification of the specific accusations, reasonable time to make a defense and public trial by an impartial jury. 42 Pa.C.S. § 4136. In this case, the hearings and sentencings were held simultaneously. Also, they were sentences of determinate terms of imprisonment with fixed fines imposed; distinctive features of a criminal contempt citation. *L & J Equipment Co., Inc. v. United Mine Workers of America*, 339 Pa.Superior Ct. 51, 488 A.2d 303 (1985).

For the foregoing reasons, we conclude that the court improperly commingled civil and indirect criminal contempts and because of the imprecise nature of the contempt orders we hereby reverse the contempt citations as to the Appellants herein.

## ORDER

AND NOW, this 19th day of July, 1990, the orders of the Court of Common Pleas of Cambria County in the above-

captioned matter are hereby reversed and the contempt citations are vacated.